Pettigrew vs. The Village of Evansville and another.

PETTIGREW VS. THE VILLAGE OF EVANSVILLE and another.

*Coterminous proprietors — Drainage of land — Injunction — Review of questions of fact.*

1. The owner of land on which there is a pond or reservoir of surface water, cannot lawfully discharge it through an artificial channel directly upon the land of another, greatly to his injury.
2. A municipal corporation has no greater power than natural persons in this respect, except through an exercise of the right of eminent domain.
3. The fact that such artificial channel does not extend entirely to the other party's land will not affect the question.
4. Where the injury from such discharge would be permanent, it will be restrained by injunction.
5. Under the practice established by statute in this state, in causes tried by the court alone, the appellate court will not review questions of fact, except those brought before it by the *appellant's* written exceptions to the findings of fact.

| | |
|---|---|
| 25 | 223 |
| 79 | 133 |
| 25 | 223 |
| 84 | 407 |
| 84 | 445 |
| 25 | 223 |
| 85 | 263 |
| 25 | 223 |
| 96 | 450 |
| 25 | 223 |
| 98 | 244 |
| 25 | 223 |
| 99 | 182 |
| 25 | 223 |
| 104 | 419 |
| 25 | 223 |
| d106 | 312 |
| d106 | 313 |
| 25 | 223 |
| 109 | 297 |
| 25 | 223 |
| 61 LRA | 702n |

APPEAL from the Circuit Court for *Rock* County.

Action to restrain the village of Evansville, and the street commissioner thereof, from conducting the waters of a pond by an artificial ditch or channel so as to cause them to be discharged upon the plaintiff's land. The complaint alleges that the plaintiff is the owner of an undivided ninth part of certain lands adjoining said village ; that there is a large body of standing water on each side of Main street, near the north end of Second street, in said village ; that the street commissioner, under the direction of the corporation, has commenced the excavation of a large ditch from said standing water, "running along the line of said Second street, and toward the plaintiff's premises, and near thereto, for the purpose of draining said standing water in and upon said premises," which the defendants threaten to do, etc. ; that it is not necessary to so drain said water, either to improve the streets of the village or for

any other purpose connected with the duties of said corporation; that the natural channel for the drainage of the same is along the line of Main street to a certain creek, etc.; that there is no natural channel from the plaintiff's premises for the drainage of said water, but the same will stand there and cover the premises so as to damage and ruin a large portion thereof; and that, if defendants carry out their purpose, plaintiff will be greatly injured, to wit, in the sum of three hundred dollars.

Upon the complaint a temporary injunction was granted; and afterward the defendants answered. Neither the answers nor the evidence (which was voluminous) need be stated here.

The circuit judge found the facts as follows: "1. All the material allegations of the complaint are true. 2. There is no water course through or from the pond in question, but the same is a collection of surface water, and is supplied entirely by the rains and melting snows, and not by springs or permanent streams; and the waters in said pond very rarely flow and run off in any direction, but they have done so in a few instances within the past few years, in the spring and before the frost was out of the ground; and in those instances the waters ran off in the direction stated in the answer [to wit, southward from said pond along said Second street to Church street, thence westward for about six rods, thence southerly and easterly to said Second street about twelve rods north of Liberty street, thence southward along said Second street to the premises described in the complaint as belonging to plaintiff]. With these exceptions, the waters in said pond have been wasted by evaporation and percolation. 3. It is necessary to drain said pond in order properly to improve the streets in said village of Evansville. 4. The excavation of said ditch along the west line of Second street is a part and parcel of a series of contemplated improvements, by which the defendants intend to drain the water which would other-

wise accumulate in said pond, in a southerly direction along Second street, as far as Liberty street, the result of which will be that nearly all the waters which otherwise would have collected and wasted in said pond will be discharged upon the said lands of plaintiff, and will necessarily greatly damage the same." As conclusions of law, the court held that defendants had a legal right to drain said pond in the direction of plaintiff's land, and this though it caused an increased quantity of water to flow upon said land, to plaintiff's damage; and that plaintiff could not maintain this action. Judgment accordingly; and plaintiff, after excepting to the third finding of fact, and also to the fourth, as far as the words "Liberty street," and to the conclusions of law, appealed.

*Williams & Sale*, for appellant:

1. The owner of an upper field cannot construct drains or excavations, so as to form new channels on to the lower field of another; nor can he collect the waters of several channels and discharge them on the lower field, so as to increase the *wash* upon the same. Washburn on Easements, etc., 226, 353–355. 2. One has no right to drain natural reservoirs upon his own land, so as thereby to cause more water to flow upon his neighbor's land. *Kauffman v. Griesemer*, 26 Pa. St. 407; *McCombs v. Town Council of Akron*, 15 Ohio, 474. 3. A municipal corporation has control of land appropriated for a street therein, only as a trustee for that purpose, and their power over such land is much more restricted than that of individuals over their own lands. *Goodall v. Milwaukee*, 5 Wis. 32; *Rhodes v. Cleveland*, 10 Ohio, 159. 4. A man has no right to dig an artificial ditch or drain to conduct the water from his own land upon that of another in any other than its natural course. Washb. on Easements, 356; *Martin v. Riddle*, 26 Pa. St. 415; *Merritt v. Parker*, 1 Coxe (N. J.) 460; *Rhodes v. Cleveland*, *supra*. 5. The damages in this case are direct and not

Vol. XXV. — 15.

consequential, and hence do not come within the rule laid down in *Alexander v. Milwaukee*, 16 Wis. 247.

*J. B. Cassoday* and *Willard Merrill*, for respondents, argued, among other things : 1. That an injunction will not usually be granted to restrain an alleged private trespass, because the aggrieved party has an adequate remedy at law, and that this case does not come within any of the exceptions to that rule. 2. That since the pond in question is not fed by any living water, and there is no natural channel leading to or from it, the owners of coterminous lots may change the surface of the same, and the village authorities may change the surface of the streets as they please, and no action can be maintained for changing the course, or obstructing or increasing the flow of such surface water on to the plaintiff's land. *Dickinson v. City of Worcester*, 7 Allen, 22 ; *Parks v. City of Newburyport*, 10 Gray, 28 ; *Flagg v. City of Worcester*, 13 id. 602, 603 ; *Goodale v. Tuttle*, 29 N. Y. 459 ; *Radcliff v. City of Brooklyn*, 4 Coms. 195, 198, 200–207 ; *Gould v. Hudson River R. R. Co.*, 2 Seld. 522 ; *Lansing v. Smith*, 4 Wend. 9 ; *Myers v. Gemmel*, 10 Barb. 537 ; *Parker v. Foote*, 19 Wend. 309 ; *Broadbent v. Ramsbotham*, 34 Eng. Law & Eq. 555. The same rule holds good when applied to *sub-surface* water passing through the earth by percolation. *Ellis v. Duncan*, 21 Barb. 230 ; *Wheatley v. Baugh*, 25 Pa. St. 532 ; *Acton v. Blundell*, 12 Mees. & Wels. 324. 3. Where an individual, or a board of individuals, is vested with *discretionary* powers, they are not answerable for the manner in which they exercise those powers. *Druecker v. Salomon*, 21 Wis. 627.

The following opinion was filed at the February term, 1869 :

DIXON, C. J. This case differs from any heretofore decided by this court, and from any cited by counsel for the defendants. Here the injury to the plaintiff's land,

arising from the proposed improvement of the street, is direct. In the others it was indirect and consequential merely. The defendants propose, by digging the ditch, to drain the waters of the natural reservoir, which now gather into it from a considerable distance over the surface of the surrounding country, and thence escape only by percolation and evaporation, and turn them immediately upon the land of the plaintiff, greatly to his injury, as the court below has found. This is a direct injury, as direct as if the defendants had proposed, without compensation, to throw upon the plaintiff's land earth, gravel, stone, or other materials, which it became necessary for them to remove from the street in order properly to improve it. It is an injury in its nature as direct as if one were by spouts or troughs to turn the water from his roof immediately upon the soil of his neighbor, which all the authorities agree cannot be done. The case differs, therefore, from *Alexander v. Milwaukee*, 16 Wis. 247, where the injury to the property of the plaintiff was remote and consequential. The blowing of the wind in a particular direction caused the waters of the lake to beat in upon his premises and injure them. The municipal authorities did not there, as the necessary and immediate result of their act, turn the water upon the premises of the party complaining, as they propose to do here. And the cases of *Goodall v. Milwaukee*, 5 Wis. 32 ; *Weeks v. Milwaukee*, 10 id. 242 ; and *Smith v. Milwaukee*, 18 id. 63, so far as they bear upon the question under consideration, certainly tend very strongly to sustain the claim of the plaintiff. And of the decisions made by other courts, none which are cited can be said to authorize the claim set up by the defendants. The cases of *Parks v. Newburyport*, 10 Gray, 28, and *Flagg v. Worcester*, 13 id. 601, are supposed to give some color of authority for that claim ; but even they do not, as we shall endeavor to show. All the other cases cited are to the point that one proprietor of land has no legal, and can acquire no prescriptive, right to have the

surface water, accumulating on his own land by the fall-
ing of rain or the melting of snow, flow off on to or over
the land of an adjoining proprietor as it has been accus-
tomed and would in the future continue to do were the
land of such adjoining proprietor suffered to remain as
in a state of nature ; nor can such adjoining proprietor,
in case the flowing of the water off, on to or over his land.
should be beneficial to him, claim the legal right, or
acquire the privilege by prescription, of having the same
continue· against the will of the owner upon whose land
the water actually falls and accumulates.   And the same
rule holds good when applied to sub-surface water pass-
ing through the earth by percolation.   *Luther v. Winni-
simmet Co.,* 9 Cush. 171 ; *Ashley v. Wolcott,* 11 id. 192 ;
*Goodale v. Tuttle,* 29 N. Y. 459 ; *Rawston v. Taylor,*
33 Eng. Law and Eq. 428 ; *Broadbent v. Ramsbotham,*
34 id. 555 ; and *Ellis v. Duncan,* 21 Barb. 230, are all ·
cases of this nature.

The principle upon which those decisions rest is very
obvious.   It is, that the loss or damage to the land
of any proprietor, caused by the presence of surface
water collected by the melting of snow or the falling
of rain thereon, must be borne by himself, and that
he cannot lawfully insist or claim by prescription that
the same or any part thereof shall be sustained by the
adjoining or other proprietor of land, even though the
land of the latter was so situated in a state of nature
that it would have received the water and sustained the
loss.   Every owner may lawfully so improve his own
land as to prevent the flow of surface water thereon from
the land of his neighbor.   And so, too, if the running of
the surface water from one man's land, when in a state
of nature or otherwise, off, on to or over the land of
another, is such as to be beneficial to the latter, still he
cannot claim it as a legal right, or prescribe for it after
any lapse of time.   The first proprietor may so provide,
by suitable erections or appliances on his own land, as
to retain the water or cause it to flow in some other

direction. And the cases in the 10th and 13th Gray hold no other or different doctrine. They merely apply the same general principle to towns and cities in their capacity of owners of land for highways and other public uses, and decide that such corporations, like other owners, are not liable in damages to the proprietors of other lands for interrupting the flow of surface water across streets or lands held for other public uses. It is the duty of every owner of land, if he wishes to carry off the surface water from his own land, to do so without material injury or detriment to the lands of his neighbors, and if he cannot, he must suffer the inconvenience arising from its presence, and cannot complain that others refuse to allow it passage over their lands. Such is the sound and wholesome doctrine of the law upon this subject; and although it does not go so far as to require the owner to resort to any artificial means to prevent the surface water from his land flowing on to the land of another, when such flowing is produced by natural causes, yet it will prevent him from using such means for the purpose of making it flow there, whenever the same would be materially injurious to the interests of the proprietor thereof. And it is also true, as stated in the books, that considerable latitude is left to the owners of estates as to the manner in which they will cultivate and improve them, and in so doing they may undoubtedly somewhat change the course and flow of the surface water, so as in a measure to increase the quantity which would otherwise pass upon the lands of others. They may also fill up low and wet places so as to render them arable, or fit for crops, thus causing the water which previously settled in them to spread and pass on to the lands of others, doing no perceptible injury thereto. But the extent to which any proprietor may go, in these and other ways, in turning the surface water of his own land off on to the lands of others, must, in each case, we think, be determined by the degree of injury which it will produce. Very slight damage will not, perhaps, be

regarded; but if the injury be immediate, and such as to perceptibly and materially impair the value or destroy the usefulness of the adjoining estate, we apprehend that the law will not permit it to be done; and certainly we know of no adjudged case where it has been held that the waters of a natural pond or reservoir upon the land of one person may be drained by him directly upon the land of another, greatly to his injury; nor where one owner has been allowed, by means of a ditch, trench, sewer or the like, to gather the surface water from his own land and throw it upon the land of another, so as materially to lessen its value and produce injury to the owner. Such a proceeding would be contrary to natural right and justice, and the law does not sanction it. And the decisions to which we have alluded, and which were cited by counsel for the defendants, instead of supporting their claim are really against it. If the owner of land has the right, by artificial means, to prevent the flowing thereon of surface water from the land of another which in a natural state would flow there, it follows *a fortiori* that no owner may, with impunity, turn the surface water from his land upon the land of another to the injury of the latter, when, without the employment of artificial means for that purpose, the same never would have flowed there at all. The two rights would be entirely inconsistent with each other — the right in one owner to undo or totally defeat what the other had rightfully done. And such are the decisions upon the subject, whenever we find any going directly to the point. In *Adams v. Walker*, 34 Conn. 466, it was held that a person has no right, by grading the surface of his land, to turn the surface water which ordinarily falls upon or flows over it, upon the adjoining lands of another; and that it makes no difference that he does it for the purpose of preventing the water from flowing into his well, or for other lawful purpose, and with no intention to injure the adjoining owner. And to very nearly the same effect is the case of *Miller v. Laubach*,

47 Pa. St. 154. It was there held, that if the defendant collected water from his own land and turned it in a body upon that of the plaintiff, through an artificial channel, to his injury, he was entitled to recover the damages he had sustained. And the same principle which governs as between individuals, holds good as between towns and villages and individual proprietors. This we have seen by the decisions in Massachusetts above referred to. And the case of *Nevins v. The City of Peoria*, 41 Ill. 502, is an adjudication fully to the point we are considering. It was there decided, that the city must respond in damages for injuries done to the property of the plaintiff under very nearly the same circumstances as are here presented; and that if the city wished to acquire the right to turn a stream of water upon the premises, to the injury of the plaintiff, it must do so by an exercise of the power of eminent domain, and by the payment of full compensation as the constitution requires. We think that case was correctly decided, and that this must be decided in the same way.

Some observations may be thought necessary to distinguish this from the leading case of *Radcliff's Executors v. The Mayor*, etc., *of Brooklyn*, 4 Coms. 195. Enough has already been said for that purpose. There the injuries complained of were purely consequential. The public authorities did nothing outside the line of the street. They did not invade the premises of the plaintiff by conveying or causing to be conveyed thereon water or any other injurious substance. And this we think constitutes the true line of distinction, and one which is clearly recognized in the opinion in that case, on pages 198, 199, 200.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded with directions to enter judgment for the plaintiff in accordance with the prayer of his complaint.

On a motion for a rehearing, the counsel for the defendants contended that, even if it be conceded that grading and draining the streets of the village in the manner contemplated would have a tendency to carry off a portion of the surface water, which would otherwise accumulate in the pond, to a point within about twenty rods of plaintiff's premises, from which point, by the natural descent of the surface, the water would flow off upon plaintiff's land and injure it, yet such injury would be what is termed in law a *remote*, and not a *direct*, consequence of the grading and draining, and the plaintiff could not even recover damages on account of it; still less was he entitled to a perpetual injunction restraining the village from making these improvements. They then criticised and distinguished the cases of *Nevins v. City of Peoria*, 41 Ill. 502; *Miller v. Laubach*, 47 Pa. St. 154; *Kauffmann v. Griesemer*, and *Martin v. Riddle*, 2 Casey, 407 and 415; *Goodall v. Milwaukee*, 5 Wis. 32; *Smith v. Milwaukee*, 18 id. 63; *Pearce v. Milwaukee*, id. 428, and *Weeks v. Milwaukee*, 10 id. 269, 270. They further contended that in *Alexander v. Milwaukee*, 16 Wis. 247, the decision was not based at all upon the idea that the damages were *remote*, but solely upon the ground that the defendant corporation in that case was making a public improvement, with ample authority, and in a careful manner, and was not responsible for damages which might result therefrom to property in the vicinity of such improvement, no part of which was taken or used therefor, and unless that case is overruled, it is decisive against the plaintiff in this. They then cited and commented on the cases in Massachusetts, especially *Gannon v. Hargadon*, 10 Allen, 109, and *Turner v. Dartmouth*, 13 id. 291, as sustaining the decision of the circuit court in this case. They also cited the additional cases of *Barry v. Lowell*, 8 Allen, 127; *O'Connor v. Pittsburg*, 18 Pa. St. 189; *In re Ridge street, Allegheny City*, 29 id. 391; *Drake v. R. R. Co.*, 7 Barb.

508; *Wilson v. New York*, 1 Denio, 595.  To the point that an injunction should not be granted because the plaintiff, if aggrieved, had an adequate remedy at law, they further cited *Akrill v. Selden*, 1 Barb. 317; *Drake v. R. R. Co.*, 7 id. 508; *Hart v. Albany*, 3 Paige, 213; *Same Case*, 9 Wend. 571.

The appeal was finally disposed of at the January term, 1870, when the following opinion was filed:

DIXON, C. J.  Counsel for the defendants argue very earnestly and at much length for a rehearing, and complain of several most serious mistakes both of law and of fact.  As to the facts, the principal mistake claimed is, that the court assumes that the trustees of the village, and the street commissioner acting under them, proposed and intended to drain the water of the pond upon the land of the plaintiff, whereas they say the proof was that the trustees and commissioner intended to dig the ditch only to a point from twelve to twenty rods distant from the plaintiff's line, and that from that point to the line the inclination of the land was such that the water would run upon the premises of the plaintiff of itself, and without any ditching or artificial aid whatever.  We decided the cause upon the case presented, and that required no examination of the evidence, and we did not examine it.  The evidence was not read at the argument, and could not properly have been.  The court below found in favor of the plaintiff upon the facts, but against him on the law; and so judgment was rendered for the defendants.  Upon such judgment in their favor, the defendants had no occasion to except to the findings of fact.  Indeed they could not do so, as they were not aggrieved, and did not desire to appeal from the judgment.  On appeal by the plaintiff, therefore, the only questions presented were upon his exceptions, which, for the most part, were to the conclusions of law upon the facts found.  The material facts being found in his favor, the plaintiff had no cause to complain of those findings, and did not except to them; and

hence the facts were not before us for review on the evidence. This may be a defect in practice which ought to be remedied by legislation ; for it would seem, in cases of this nature, that the successful party, and respondent in appeal, should be permitted to take exceptions, and have a review of questions decided against him on appeal by the other party. By the former practice in equity, the respondent had such review in all cases. The appeal from the decree brought up all the evidence, which was examined by this court, and every question considered and decided here which was or could have been presented at the hearing below. But 'a different practice is now established by statute, and in causes tried by the court there can be no examination of the evidence or review of the facts, unless upon written exceptions to the findings of fact ; and those exceptions can be preferred only by the party appealing.

It is a matter of no moment, however, in this case, that we are unable to review the findings of fact ; for upon the facts as claimed by counsel, as well as upon those found by the court, our decision must be the same. The court found all the material allegations of the complaint to be true, except as therein specifically stated. The complaint alleged the existence of the pond, or a large body of standing water, on each side of Main street ; that the defendant, the street commissioner, acting under and by direction of the trustees, had commenced the excavation of a large ditch from said standing water, and running thence along the line of Second street toward the premises of the plaintiff, and near thereto, for the purpose of draining said standing water in and upon said premises ; that the defendants gave out and threatened that they would complete such ditch and drain the water thereon ; and that if they did so the plaintiff would be very greatly injured, to wit, in the sum of three hundred dollars.

The complaint further alleged that it was wholly unnecessary, for the purpose of improving Main street,

to drain water in that direction. The answer denied specifically nearly all the allegations of the complaint, and among others this last one, as follows: "And these defendants deny that it is not necessary to drain said water in and upon said premises, to improve the streets of said village." The court below found this issue in favor of the defendants, and that "it was necessary to drain said pond, in order properly to improve the streets in said village of Evansville." The other findings of fact, besides the first and that just quoted, were but two in number, and were substantially in favor of the plaintiff. The first finding, that all the material allegations of the complaint were true, except as thereinafter stated, has already been given. The others read as follows: "There is no water-course through or from the pond in question, but the same is a collection of surface water, and is supplied entirely by the rains and melting snows, and not by springs or permanent streams; and the waters in said pond very rarely flow or run off in any direction, but they have done so in a few instances within the past few years, in the spring and before the frost was out of the ground, and in those instances the waters ran off in the direction stated in the answer. With these exceptions, the waters in said pond have been wasted by evaporation and percolation. The excavation of said ditch along the west side of Second street is a part and parcel of a series of contemplated improvements by which the defendants intend to drain the water which would otherwise accumulate in said pond, in a southerly direction along Second street, as far as Liberty street, *the result of which will be; that nearly all of the waters which would otherwise have collected and wasted in said pond will be discharged upon the said lands of the plaintiff, and will necessarily greatly damage the same.*"

Now, upon this state of the case, we regard it as wholly immaterial that the findings of the court were not more specific as to the point where the ditch was to terminate,

or that it was to end, if such was the proof, from twelve to twenty rods from the line of the plaintiff's land. The gist of the complaint was, that the digging of the ditch would turn the waters of the pond upon the land of the plaintiff, greatly to his injury; and that fact the court found, and it is not controverted by counsel. And we cannot assent at all to the position of counsel, that because the ditch was not to be extended quite up to the plaintiff's line, and the water conducted upon his land in that manner, the injury was of that indirect and consequential kind for which the village is not responsible. It was an injury as direct as if such had been the mode in which the water was to be conducted, and there can be no rational ground for discrimination. He who sets in motion a destructive or injurious element, as fire or water, upon his own land, knowing that it must immediately pass upon the land of his neighbor to his damage, commits a direct injury, and cannot, as counsel seem to suppose, claim exemption from liability, or escape the consequences, on the ground that the wind blew the fire, or the law of gravitation caused the water to run. Availing himself of these agencies of nature, it is his direct act, as much as if he were to throw earth, gravel, stone, or other materials upon his own land, under circumstances where, without ceasing their motion, they would pass at once upon the land of his neighbor.

The other objections urged proceed upon what we conceive to be a misapprehension on the part of counsel as to the effect of the adjudged cases, as well those in Massachusetts, upon which counsel rely, as elsewhere. They fail, as it seems to us, to properly discriminate between those cases where the proprietor may, by improvements and structures on his own land, turn away the surface water running thereon from the lands of others, and the case at bar, or the case of a proprietor who, by a ditch or other artificial channel, proposes to turn his own surface water, collected in a stream, directly

upon the land of another, so as greatly to injure it and destroy its value. In cases of the former class, if the proprietor, in obstructing the flow or turning away the water which comes from the land of another, changes its direction, as in general he must, and it then runs off upon the land of a third person, where before it would not have run, and causes damage, no action will lie in favor of such third person for the injury. As to such third person it is *damnum absque injuria*, because the proprietor who obstructs the flow and gives to the water a new direction is acting in pursuance of a strict legal right. It is his right to occupy and enjoy his own land without the inconvenience or damage resulting from the surface water flowing thereon from the lands of others, and he may lawfully resort to such means and appliances on his own land as will prevent such flow. This principle is well established by all the cases; and because the proprietor is not responsible for injuries caused by obstructing or turning away from his own land surface water *flowing thereon from the lands of others*, counsel argue that he may, by ditches, drains or other like means, carry off the surface water *falling* and accumulating on his own land, and discharge it upon the land of another, doing never so much damage, and that no liability or obligation to compensate for the injury arises at all. The distinction between the two cases, and the corresponding difference in principle, is to our minds very clear and palpable, and an examination of the authorities will show, at least so far as they have been cited or as we have been able to find them, that the proposition contended for by the counsel is not sustained by any one of them. And it would be strange if any authority could be found to support it. The proposition that an owner of land may, with impunity, drain off the ponds and stagnant waters therefrom upon the land of another, destroying its value, is so iniquitous and unjust as to be abhorrent to the sense of justice of

every intelligent mind. No court could sustain it; or, if any one could, we cannot.

And the two additional cases cited in support of this motion but further illustrate and confirm the principles laid down in the opinion already filed in this case. *Gannon v. Hargadon*, 10 Allen, 106, was a case of surface water flowing from the lands of others upon the land of the defendant, and which, by means of sods or turfs placed a few feet from his line, the defendant had obstructed, and the water then ran off upon the land of the plaintiff, where otherwise it would not. The court below instructed the jury that the defendant might lawfully obstruct the flow of the water upon his own land, and that if, in so doing, he caused it to run off upon the land of the plaintiff, doing injury, no action could be maintained against him for such injury; but that if he permitted the water to come upon his land, and then obstructed it, causing damage to the plaintiff, he was responsible. The substance of the instructions was, that if the defendant exercised his right of stopping the water, he must do so at the point where it crossed his line, and could not do so elsewhere on his own land. This the court above held to be erroneous, and that the defendant had the right to stop the water where he did without incurring responsibility for the injury caused the plaintiff. Such was the real and only material point involved in the case; and although there may be found in the opinion some expressions susceptible of a more extended or different application, we are not to forget that the question before the court concerned only the right of the owner of land with respect to surface water *flowing thereon from the lands of others*. After stating the general principle as established by previous decisions, the court say: "Nor is it at all material, in the application of this principle of law, whether a party obstructs or changes the direction or flow of surface water by preventing it from coming within the limits of his land, or by erecting barriers or changing the level of the

soil, so as to turn it off in a new course after it has come within his boundaries. The obstruction of surface water, or an alteration in the flow of it, affords no cause of action in favor of a person who may suffer loss or detriment therefrom, against one who does no act inconsistent with the due exercise of dominion over his own soil. This principle seems to have been lost sight of in the instructions given to the jury. While the right of the owner of the land to improve it and to change its surface so as to exclude surface water from it is fully recognized, even though such exclusion may cause the water to flow on to a neighbor's land, it seems to be assumed that he would be liable in damages if, after suffering the water to come on his land, he obstructed it and caused it to flow in a new direction on land of a conterminous proprietor, where it had not previously been accustomed to flow. But we know of no such distinction. A party may improve any portion of his land, although he may thereby cause the surface water flowing thereon, whencesoever it may come, to pass off in a different direction and in larger quantities than previously. If such an act causes damages to adjacent land, it is *damnum absque injuria*. On this point the instructions were clearly erroneous." There was nothing in the decision, therefore, at all sanctioning the position here taken by counsel.

And the case of *Turner v. The Inhabitants of Dartmouth*, 13 Allen, 291, was of the very same kind. The question was as to the right of the town to obstruct or change the course of surface water coming upon the highway from the adjacent lands of others. The acts complained of by the plaintiff, as stated in the opinion of the court, "consisted of placing earth on the road in front of the plaintiff's mill, so as to raise the surface of the road, and changing and re-arranging certain water bars a short distance westward of the mill. The effect of these alterations was to change the course of the surface water which came upon the highway, so that the water ran down upon the plaintiff's premises and

injured his mill. There being a considerable tract of land from which the water came down upon the highway, the injury done by it to the plaintiff was very considerable." Reference was made to former adjudications, and the doctrine asserted, that, for the purpose of carrying off such water, the officers of the town might construct drains and culverts within the limits of the highway, and at such points or places as they might deem most expedient and useful to the public, and that no action would lie for the damage thereby occasioned to the land of an adjoining proprietor. But the present case is widely different. Here the proposition was to discharge a large body of water, forming a natural pond situated in the highway, though supplied to a considerable extent from the surrounding lands of other proprietors, at once upon the premises of the plaintiff, so as to cause great mischief and injury. This we think distinguishes the case from all those to which reference has been made; and if an individual owner, suffering a large pond of water to accumulate upon his own land, under like circumstances, could not lawfully discharge the same in a body or otherwise upon the premises of his neighbor, so as to cause great injury, as we think he could not, then we are of opinion that it was unlawful for the officers of the village to attempt to do so.

Another and the last objection raises a question, perhaps, of more doubt. It is, whether the proceeding by injunction can be sustained to prevent the injury. This depends altogether upon the nature of the injury. If it be permanent, or such as will continue to operate in all future time, then the proceeding can be sustained; but if only temporary, or such as will cease when the waters of the pond are once drawn off, then it cannot. The finding of the court is not specific upon this point, but we infer from an allegation of the complaint, which is found true by the general clause in the finding, that the threatened injury is permanent. That allegation is, "that if said water is so drained in and upon the

same, it will stand there and cover said premises so as to damage and ruin a large portion thereof." Such being the nature of the injury, it seems clear that the jurisdiction of equity attaches, and that the plaintiff is entitled to the relief, the same as if his land was to be permanently flowed by the waters of a living stream, or as if it had been condemned for public use under the mill dam act, and his damages not paid. *Sheldon v. Rockwell*, 9 Wis. 166; *Ackerman v. Horicon Iron Manufacturing Co.*, 16 id. 150; *Zweig v. The Same*, 17 id. 362.

*By the Court.* — Motion denied.