### ANDREW J. TEMPLETON v. WITLIAM VOSHLOE.

*Rights of Adjoining Proprietors as to Drainage.*—The owner of an upper field may not construct drains or excavations so as to form new channels on to a lower field, nor can he collect the water of several channels and discharge it upon the lower field, so as to increase the wash upon it. The right of the owner of the upper field to make drains on his own land is restricted to such as are required by good husbandry, and the proper improvement of the surface of the ground, and as may be discharged into natural channels without inflicting injury on the lower field.

Filed March 8, 1881.

Appeal from Posey.

Opinion of the court by Mr. Chief Justice Niblack.

In this action the plaintiff, Andrew J. Templeton, complained of the defendant, William Voshloe, and said at the time of the commission of the grievance hereinafter alleged he was, and still continued, in the lawful possession of a certain described tract of land in Posey county, and that the defendant was in the possession of a certain other tract of land adjoining the plaintiff's said tract, also fully described; that within about ten rods

of the boundary line, between the said two tracts of land, and parallel with said line, there runs entirely across the said tract of the defendant, a natural ridge or elevation of land about two and one half feet in height, which ridge in its natural condition causes all the water which falls on the defendant's tract lying east of said ridge, and which flows upon it from a southeasterly direction, to flow back from the plaintiff's land in a southeasterly direction over and across the land of the defendant, and lands other than the lands of the plaintiff, contiguous thereto; that the defendant on, or about, the first day of March, 1878, unlawfully and wrongfully cut through said ridge, or elevation of land, in two places, to the depth of two and one half feet, and four feet wide, and extended from said opening so cut by him a ditch three feet wide and two feet deep, to the land of the plaintiff, and thereby caused a great quantity of water to flow continuously from that time, to the time of bringing this suit, over and upon the said land of the plaintiff, injuring and destroying the crops of corn wheat and grass upon the same, to the damage of the plaintiff in the sum of one hundred dollars.

The defendant demurred to the complaint and his demurrer was sustained.

The plaintiff refusing to plead further, final judgment was rendered in favor of the defendant upon demurrer.

We have only to consider the question of the sufficiency of the complaint.

In the argument of this case a great number of authorities have been cited, bearing upon the general subject of surface water caused by rain and melting snow, but only a portion of the authorities thus cited have any direct application to the precise question involved in the appeal.

In referring to the subject under discussion, Washburn on Easements, marginal page 353, sec. 6, says: Before proceeding to consider the law as to water percolating through the earth beneath its surface, it is necessary to refer to a few principles which seem now to be pretty well settled as to the respective rights of adjacent land-owners, in respect to waters which fall in rain, or are in any way found upon the surface, but not embraced under the head of streams, or water-courses, nor consti-

tuting permanent bodies of water, like ponds, lakes and the like. It may be stated as a general principle that by the civil law, where the situation of the adjoining fields is such that the water falling or collected by melting snows and the like, upon one, naturally descends upon the other, it must be suffered by the lower one to be discharged upon his land if desired by the owner of the upper field. But the latter can not by artificial trenches, or otherwise, cause the natural mode of its being discharged to be changed to the injury of the lower field, as by conducting it by new channels in unusual quatities to particular parts of the lower field.

The principle recognized by the test thus quoted from is well illustrated and sustained by several leading cases referred to, and commented upon by the learned author.

From these, and other decided cases, we deduce the doctrine that the owner of the upper field may not construct drains or excavations so as to form new channels on to the lower field, nor can he collect the water of several channels and discharge it upon the lower field so as to increase the *wash* upon the same. The right of the owner of the upper field to make drains on his own land is restricted to such as are required by good husbandry, and the proper improvement of the surface of the ground, and as may be discharged into natural channels without inflicting injury on the lower field.

As to when and under what circumstances, the owner of the lower field may obstruct or direct the flow of surface water which naturally descends upon his land, we need not inquire, as that question is in no way involved in the proper decision of this cause.

Tested by the doctrine deduced and announced as above, the complaint in this case appears to us to have been sufficient upon demurrer.

*Butler* v. *Peck*, 16 Ohio St. 334; *Martin* v. *Riddle* 26 Penn, St. 415; *Kauffman* v. *Guessner*, Id. 407; *Martin* v. *Jett*, 12 Louisiana 686; *Angell on Water Courses*, Section 108 *et seq*; *Miller* v. *Lanback*, 47 Penn. St. 154; *Livington* v. *McDonald*, 21 Iowa 160; *Adams* v. *Walker*, 34 Conn. 466; *Wood on Nuisance*, 404, sec. 386; *Pettigrew* v. *The Village of Evansvillc*, 25 Wis. 223;

*Taylor* v. *Fickas*, 64 Ind. 201; *Schlecker* v. *Phillippi*, 67 Ind. 201; *Hoyt* v. *The City of Hudson*, 27 Wis. 656; *Washburn on Easements*, secs. 209, 210; *Cooly on Torts*, 577; *Waffle* v. *The N. Y. C. R. R. Co.*, 58 Barb. 413.

The judgment is reversed with costs, and the cause demanded for further proceedings.

---

## PROFESSIONAL ETHICS.

Whether this subject is not worthy of more attention than it receives may properly be doubted. Are we not apt, in the excitement of a forensic contest at the bar, on the trial of a use, to forget the dignity which ought always to be preserved? We speak not now of the shysters who are apt to throng and disgrace the bar, at times, and who are destitute of moral instincts and social principles. Nothing can be expected of them, but that they act out their natures, just as the tiger does, or the hyena, or the rattlesnake. But these aside, should not attorneys conduct all their business with at least usual business courtesy? Should they not disdain to take every little technical advantage, instead of having an eye only to substantial justice? Is not mere quibbling disgraceful in the extreme? We have thought, sometimes, that a certain class of lawyers, who would feel hurt and insulted not to be considered gentlemen, ought to place on their office doors the inscription on the turner's sign: ALL SORTS OF TWISTING AND TURNING DONE HERE.