JACOB SCHNEIDER, Respondent, v. THE MISSOURI
PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 6, 1888.

SURFACE WATER — RULE CONCERNING UNDER THE CIVIL LAW AND
UNDER THE COMMON LAW.—Concerning surface water under the
civil law, there was a natural easement or servitude in favor of the
owner of the superior or higher ground, by reason of which the
proprietor of the inferior or lower ground was bound to receive on
to his ground all the surface water which naturally flowed down
upon it from the higher ground. Under the common law there is
no such easement. By the civil law the inferior proprietor, on the
one hand, could not obstruct the natural flow of the surface
water, to the injury of the superior proprietor; while, on the other
hand, the superior proprietor could not increase the natural flow
of the water from his land by artificial means. But under the
common law, the rights of the parties as to surface water are differ-
ent, and there is no easement in favor of the superior proprietor,
and the inferior proprietor has the right to obstruct it or to turn it
away. But under neither rule has the superior proprietor the right
to collect the water in a body on his land, and precipitate it in a
body, or in greatly increased or unnatural quantities, upon his
neighbor, to the substantial injury of the latter.

APPEAL from Vernon Circuit Court, HON. CHARLES
G. BURTON, Judge.

*Reversed and remanded.*

Statement of case by the court.

This was an action for the recovery of damages
caused to plaintiff's land, crops, and grass, etc., by
overflow, occasioned, as alleged, by the defendant's neg-
ligence. The negligence charged is in the construction
and maintenance of the approaches to the railroad
bridge of defendant across the Marmaton river in
Vernon county. The approaches are alleged to be " a
solid earthen embankment of an average height, above
the level of the surrounding bottoms and other lands, of

about eight feet," about five hundred yards in length on one side of the river, and one hundred yards in length on the other side. It is charged that the defendant was negligent in not providing, in the approaches, openings and water-ways for the water escaping from the Marmaton river in times of overflow, and the water accumulating from rains and snows.

The court gave for the plaintiff the following instructions:

"1. The jury are instructed that if they find, from the evidence, that defendant, in constructing and maintaining the roadbed and approaches to the bridge crossing the Marmaton river, as mentioned in the pleadings and proof, built and maintained, in a negligent and careless manner, in not building the same on trestles, or in not providing sufficient water-ways to allow the surplus water of said river to escape, and that said roadbed was not built in such a manner as a prudent and careful person would have built, in view of all the facts and surroundings, and by reason of said roadbed being built, unnecessary damage was done the plaintiff by reason of said surplus water from said river being forced over, upon, and held upon plaintiff's land, and that said damage would not have occurred to plaintiff's land and crops but for the said improper building of said roadbed, then they will find the issue for the plaintiff, and assess as damages on each count in such sum as may appear to them from the evidence, not exceeding the claim by plaintiff in his petition."

"2. The court instructs the jury that, while the defendant had the right to build and maintain said roadbed, yet in so doing it was bound to take notice of the character and lay of the land and country over and through which it builds, and the original course and evenness, and nature, and the character of the stream in the locality where it builds such roadbed. And if you find, from the evidence, that the place mentioned in the pleadings and proof, as where the roadbed was built and maintained of earthen embankments, is and was low bot-

tom lands, and the surrounding country towards plaintiff's was low and flat, and the said Marmaton river was accustomed to overflow its banks and spread over the surrounding country, and you further find that sufficient openings and water-ways were not made in said embankments, at the time of the injuries complained of, to carry off said surplus water escaping from said river, and that the trestle for the railroad to run over, and a roadbed with sufficient openings and water-ways to carry off said surplus water from said river, would have been as good, substantial, and safe for the defendant to have built, regard being had to its own interest, its duty to the public and its employes, and the rights of others, as said embankment, and that by so building its roadbed on trestles, or with sufficient water-ways for the purpose of conveying the said surplus waters, the damage to the plaintiff would have been averted, you will find for the plaintiff, and assess his damages as per instruction number one.''

ADAMS & BOWLES, and D. A. HARRISON, for the appellant.

I.   The defendant's demurrer to the plaintiff's evidence, at the close of his case, and its instruction numbered one, at the close of the entire case, should have been given.   There is no evidence that the defendant's bridge, or the embankment which formed its approach thereto, tended to make the water overflow. *Mayer v. Railroad*, 88 N. Y. 351; *Radcliffe v. Mayor*, 4 Comst. 195; *McCormick v. Railroad*, 57 Mo. 433.

II.   The plaintiff's instructions were evidently based on the doctrine enunciated in the cases of *Shane v. Railroad*, 71 Mo. 237, and *McCormick v. Railroad*, 70 Mo. 359, which was never the law in this state, and those cases have been expressly overruled. *Benson v. Railroad*, 78 Mo. 504, 512; *Abbott v. Railroad*, 83 Mo. 284–285; *Jones v. Railroad*, 84 Mo. 151.   The waters overflowing the banks of the river were surface waters.

*McCormick v. Railroad*, 57 Mo. 433; *Abbott v. Railroad, supra.*

J. B. JOHNSON, for the respondent.

I. The theory on which this case was tried is fully supported by the following authorities: *Jones v. Railroad*, 84 Mo. 151; *Abbott v. Railroad*, 83 Mo. 271; *Moss v. Railroad*, 85 Mo. 86; *Martin v. Benoist*, 20 Mo. App. 262; *Brink v. Railroad*, 17 Mo. App. 177.

II. The petition shows that this case was not tried on the law as declared in the case of *Shane v. Railroad*, 71 Mo. 237, and we respectfully contend that the case was fairly presented, honestly considered, and justly decided by the jury, and the judgment should be affirmed.

HALL, J.—The only question in this case is as to the correctness of the two instructions given for the plaintiff. That question is, was it the duty of defendant, under the facts hypothetically stated in the instructions, to have made in the railroad embankment sufficient openings and water-ways to carry off the surplus water? The water which overflowed the banks of the Marmaton river and spread over the surrounding country was surface water. *McCormick v. Railroad*, 57 Mo. 438. The duty of the defendant, under the facts stated, was no greater than would have been the duty of any other land proprietor under the same facts. The question in this case must, therefore, be answered in accordance with the rule relating to surface water, free from embarrassment on account of any other rule or principle of law.

There is an irreconcilable conflict between the decisions in this country concerning surface water. The courts of certain states, in their decisions on the subject, adhere to the rule of the civil law, while the courts of the other states follow what is known as the common-law rule. The decisions of our Supreme Court on this subject have not been uniform. In *McCormick v. Rail-*

*road*, 70 Mo. 359, and *Shane v. Railroad*, 71 Mo. 244, the rule of the civil law was approved, Hough, J., dissenting in each case. In *Abbott v. Railroad*, 83 Mo. 272, all the former decisions on the subject were reviewed, the rule of the civil law rejected, and the common-law rule declared to be the law in this state, except so far as that rule may have been changed by section 810, Revised Statutes. It was explained why that statute was immaterial in that case, and it may, perhaps, be well for us to say that for the reasons therein given the statute has no bearing whatever on this case.

The rule of the civil law is thus stated by Judge Dillon: "By the civil law, certain easements, or *services* (as they were termed by that law), were based upon the relative situation of the premises; and the lower land owed to the higher land the *service* or *servitude* of being bound to receive all the water which *naturally* (without the hand of man) flowed down upon it. The inferior proprietor could not obstruct the flow to the injury of the superior proprietor, nor could the latter make the servitude more burdensome. *Livingston v. McDonald*, 21 Iowa, 168. The common-law rule is thus stated by Dixon, C. J.: "The doctrine of the common law is, that there exists no such natural easement or servitude in favor of the owner of the superior or higher ground, or fields, as to mere surface water, or such as falls or accumulates by rain or the melting of snow, and that the proprietor of the inferior or lower tenement or estate may, if he choose, lawfully obstruct or hinder the natural flow of such water thereon, and in so doing may turn the same back upon, or off on to, or over, the lands of other proprietors without liability for injuries ensuing from such obstruction or diversion." *Hoyt v. City of Hudson*, 27 Wis. 656. The ground of difference between the two rules is thus made clear. Under the civil law there was a natural easement or servitude in favor of the owner of the superior or higher ground, by reason of which the proprietor of the inferior or lower ground was bound to receive on to his ground all the sur-

face water which naturally flowed down upon it from the higher ground; under the common law there is no such easement. On account of the existence of the easement under the civil law the rights of parties depending thereon were by that law defined; the inferior proprietor, on the one hand, could not obstruct the natural flow of the surface water to the injury of the superior proprietor; while, on the other hand, the superior proprietor could not increase the natural flow of the surface water from his land by artificial means. But since, under the common law, there is no such easement, the rights of parties, as to surface water, are by the common law defined only so far as they depend upon the non-existence of such easement; as there is no easement in favor of the superior proprietor to flow the surface water from his land on to the land of the inferior proprietor, the latter has the right to obstruct it or to turn it away; but the common-law rule is silent as to the rights of the superior proprietor, for the reason, that, as there is no such easement in his favor as under the civil law, he has no peculiar rights in relation to the surface water flowing from his land; those rights are subject to and depend upon the general principles of the common law, one of which has found expression in the maxim, "*sic utere tuo ut alienum non laedas.*" The rule of the civil law, in so far as it limits the right of the superior proprietor to the natural flow of the surface water from his own land, and restrains him from increasing the flow by artificial means, seems based upon the principle expressed in the same maxim. *Opinion by Napton, J., in Shane v. Railroad, supra,* 244. There would seem to be no material difference in theory between the rights of a proprietor under the two rules in the disposition of the surface water originating on his land, and very little difference is found in practice in the application of the two rules, by the courts adhering to them, to the same facts. *Livington v. McDonald,* 21 Iowa, 160; *dissenting opinion by Hough, J., in Shane v. Railroad, supra,* 255–256. However this may

be, under neither rule has the superior proprietor the right to collect the water in a body on his land and precipitate it in a body, or in greatly increased or unnatural quantities upon his neighbor, to the substantial injury of the latter. *Byrns v. Cahoes*, 67 N. Y. 206 ; *Bastable v. Syracuse*, 8 Hun, 591 ; *O'Brien v. St. Paul*, 25 Minn. 335 ; *McClure v. Red Wing*, 27 Minn. 195 ; *McCormick v. Railroad*, 57 Mo. 430 ; *Martin v. Benoist*, 20 Mo. App. 270.

Nowhere has the reason in support of this view of the common-law doctrine been more clearly or forcibly stated than in the opinion of Dixon, C. J., on the motion for rehearing in *Pettigrew v. Evansville*, 25 Wis. 236. In disposing of certain objections made to the original opinion it is said :   "The other objections urged proceed upon what we conceive to be a misapprehension, on the part of counsel, as to the effect of the adjudged cases, as well those in Massachusetts, upon which counsel rely, as elsewhere.   They fail, as it seems to us, to properly discriminate between those cases where the proprietor may, by improvements and structures on his own land, turn away the surface water running thereon from the lands of others, and the case at bar, or the case of a proprietor, who, by a ditch or other artificial channel, proposes to turn his surface water, collected in a stream, directly upon the land of another so as greatly to injure it and destroy its value.   In cases of the former class, if the proprietor, in obstructing the flow, or turning away, the water which comes from the land of another, changes its direction, as in general he must, and it then runs off upon the land of a third person, where before it would not have run, and causes damage, no action will lie in favor of such third person for the injury.   As to such third person it is *damnum absque injuria*, because the proprietor who obstructs the flow and gives to the water a new direction is acting in pursuance of a strict legal right.   It is his right to occupy and enjoy his own land without the inconvenience or damage resulting from the surface water flowing thereon from the lands of others,

and he may lawfully resort to such means and appliances on his own land as will prevent such flow. This principle is well established by all the cases; and because the proprietor is not responsible for injuries caused by obstructing or turning away from his own land surface water *flowing thereon from the lands of others*, counsel argue that he may, by ditches, drains, or other like means, carry off the surface water *falling* and accumulating on his own land, and discharge it upon the land of another, doing ever so much damage, and that no liability or obligation to compensate for the injury arises at all. The distinction between the two cases, and the corresponding difference in principle, is to our minds very clear and palpable, and an examination of the authorities will show, at least so far as they have been cited, or as we have been able to find them, that the proposition contended for by counsel is not sustained by any one of them. And it would be strange if any authority could be found to support it. The proposition, that an owner of land may, with impunity, drain off the ponds and stagnant waters therefrom upon the lands of another, destroying its value, is so iniquitous and unjust as to be abhorrent to the sense of justice of every intelligent mind. No court could sustain it; or if any one could, we can not."

We have quoted at such length from the opinion by Judge Dixon in order to show the difference in principle between those cases where the proprietor simply obstructs and turns away surface water which would otherwise flow onto his land from the lands of others, and those cases where the proprietor precipitates surface water, which has accumulated on his land, in a body or increased quantities upon his neighbor's land, for the reason that the plaintiff's counsel seek to apply the principle of the latter class of cases to the present case, whereas in our opinion that principle is not applicable to the present case. In the present case, the defendant, as the inferior proprietor, simply protected itself from

'the surface water flowing from the lands of others, and in so doing it acted in pursuance of its strict legal right. No one had a right to have the surface water flow across the defendant's right of way, but, on the contrary, the defendant had a perfect right to prevent the water from so doing. The surface water in such a case was a common enemy, against which the defendant had the right to protect itself. In so doing, the defendant had the right to build a solid embankment without openings and water-ways. The defendant had the right to build such an embankment in order to prevent the water crossing its right of way. An injury caused thereby is *damnum absque injuria*. The principle of the former class of cases, and not of the latter class of cases, applies to the present case. *Pettigrew v. Evansville, supra ; Gamon v. Hargadon,* 10 Allen, 106 ; *Turner v. Dartmouth,* 13 Allen, 291 ; *McCormick v. Railroad,* 57 Mo. 436 ; *Dissenting Opinion of Hough, J., in McCormick v. Railroad,* 70 Mo. 366, and in *Shane v. Railroad,* 71 Mo. 253, and cases cited ; *Abbott v. Railroad,* 83 Mo. 272 ; *Jones v. Railroad,* 84 Mo. 151.

Judgment reversed and cause remanded. All concur.