J. W. REINHART *et al.*, *as Receivers of The Atchison, Topeka & Santa Fe Railroad Company*, v. RACHEL V. SUTTON.

### No. 10228.

1. FEDERAL-COURT RECEIVER—*judgment by state court against, conclusive on Federal court, except as to time and manner of payment.* Under sections 2 and 3 of the act of Congress of August 13, 1888, amendatory of the Federal Judiciary Act, receivers over property, appointed by the United States courts, are required to manage or operate the trust property according to the laws of the state in which it is situated, and may be sued, in respect to its management or operation, in the courts of such state, without the previous leave of the court appointing them. In such cases, a judgment rendered in the state court is conclusive upon the Federal court as to the existence and amount of the plaintiff's claim; but the time and manner of its payment are to be controlled by the court under whose orders the receiver acts.

2. PRIVATE NUISANCE—*injured abutting lot owner may sue to abate as a, railroad company's ditch encroaching by erosion on street.* A railroad company has no right to dig a ditch on its right of way, for the drainage of surface water, so near to the line of a street in a town as to encroach upon the street by the erosion of the soil of its banks; and if it does so, the owner of lots abutting upon the opposite side of the street, who keeps a hotel upon them, and whose use of them for such purpose is materially interfered with by the widening of the ditch into the street, may maintain an action for the abatement of the ditch as a private nuisance and for damages caused by it.

Error from Lyon District Court. Hon. W. A. Randolph, Judge. Opinion filed December 11, 1897. *Affirmed.*

*A. A. Hurd, Stambaugh & Hurd, O. J. Wood* and *W. Littlefield*, for plaintiffs in error.

*J. Harvey Smith, W. N. Smelser* and *L. B. Kellogg*, for defendant in error.

DOSTER, C. J. The Southern Kansas Railroad, now a part of the Atchison, Topeka & Santa Fe railway

system, was built through the town of Neosho Rapids, Kansas, in 1882. It borders closely upon Seventh Street in the town named. On the opposite side of Seventh Street, the defendant in error owned and kept a hotel building and grounds. The Railroad Company dug a ditch, on its right of way, parallel to and very near the line of the street, which ditch, in time, by the erosion of the soil, widened in places to more than twenty feet, and deepened in others to ten feet; and, at some points opposite the hotel property, it encroached considerably upon the street, making access to the hotel and egress from it difficult and dangerous, and impairing its value for the purposes used. This ditch was dug to carry off surface water, which ran down a depression or draw, to some extent, but which largely spread out over the ground forming the right of way. In 1893, the Circuit Court of the United States for the District of Kansas appointed the plaintiffs in error receivers of all the roads embraced in the Atchison, Topeka & Santa Fe railway system, and they remained in charge of its property and the operation of its lines until 1895. The defendant in error sued the receivers in the District Court of Lyon County for an abatement of the ditch as a private nuisance and for damages caused by its maintenance. The jury found that the ditch was a nuisance, as claimed, and assessed damages for its maintenance at ten dollars. The court ordered that the ditch, as a nuisance, be abated by covering it up to a grade level with Seventh Street. To reverse this order this proceeding in error is brought.

It is said that the action cannot be maintained against the receivers, because they are officers of the court appointing them, administering a trust under the direction of such court, and in nowise responsible

1. Judgment by
state court
conclusive,
except.

to any other tribunal; that the funds in their possession are trust funds, which can be expended only by order of the court from which they derive their authority, and that the judgment, being one they cannot legally obey, should not have been rendered. These objections are easily disposed of. The amendment of August 13, 1888, to the Federal Judiciary Act declares:

"SEC. 2. That whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or manager shall manage or operate such property according to the requirements of the valid laws of the state in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof," etc.

"SEC. 3. That every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice." 25 U. S. Stat. at Large, 436.

By the section first quoted, receivers are to manage trust property the same as the owner was required to manage it. Therefore, if the Railroad Company was under obligation to abate the nuisance of this ditch, or to pay damages for not doing it, the receivers are likewise bound. By the section last quoted, receivers may be sued in courts other than the one appointing them; subject, however, to the general equity jurisdiction of the court from which their authority is derived. In *Dillingham v. Hawk* (60 Fed. Rep. 494),

the United States Circuit Court of Appeals construed the last section, or rather the one contained in an act of March 3, 1887, of which that of 1888 is a corrected enrollment, and held :

"Under act of Congress, March 3, 1887, which declares that every receiver appointed by a Federal court may be sued without previous leave of that court, but that 'such suits shall be subject to the general equity jurisdiction of the court in which such receiver was appointed so far as the same shall be necessary to the ends of justice,' a judgment rendered against such a receiver by a state court in an action at law, is conclusive as to the existence and amount of the plaintiff's claim, but the time and manner of its payment are to be controlled by the court appointing the receiver."

This case — and indeed the statute itself, without the aid of the explanatory decision — is conclusive against the claim of the plaintiff in error upon this point.

It is next claimed that the defendant in error has no such interest in the street as will entitle her to complain of its obstructon by another person equally entitled to its use for his purposes ; and *K. N. & D. Rld. Co. v. Cuykendall* (42 Kan. 234) is cited. In that case, the railroad company constructed its road-bed, on its right of way, across a street, and thereby partially obstructed approach to and exit from private property. It did so, however, in conformity to legal authority and in a proper manner ; and for these reasons it was held free from liability to an abutting lot owner. In this case, the encroachment of the ditch upon the street was no part of the proper construction or operation of the railroad, and it therefore falls within the class excepted out of the rule by the very language of the opinion in *K. N. & D. Rld. Co. v. Cuykendall*, supra,

2. Injured abutting lot owner may sue, when.

where it is said : " There are cases in which a different rule would be applied, as where the city council has not authorized the use of the street by the railroad company ; or where the railroad is operated in an illegal or wrongful manner."

Finally, it is claimed that the ditch was dug for the purpose of draining surface water from the railroad right of way, and that the flow of surface water may be lawfully obstructed or diverted by one proprietor, even to the injury of another. Such, it is true, is the law, but this is not a case which falls within its terms. This is not a case of the obstruction or diversion of water flow. It is a case of the discharge of surface water, in a manner not its wont, through an artificial channel, by one proprietor upon the land of another, to his damage. The common law, which in respect to such matter prevails here, will not tolerate this. Gould on Waters, § 271. A great array of cases cited by the author supports him as to this.

The fact that the ditch was originally dug on the Railroad Company's right of way cannot, under the circumstances of this case, prevent an application of the rule last stated. It was dug very close to the street, and, by the natural action of the elements, soon widened into the street. One may not discharge surface water from his own land, through an artificial channel, so near to the land of another that its natural and inevitable tendency is to encroach upon it through causes easy to foresee and guard against. The proximate cause of the injury in such case is the original digging of the ditch.

In *Livingston v. McDonald* (21 Iowa 160), a ditch for the drainage of surface water was dug to a point within sixty feet of the land of an adjoining owner. At this point, it discharged the water into a previously existing channel, which carried it about thirty

feet nearer the premises of the lower proprietor. The water washed its way over the remaining thirty feet, to the injury of the lower land. The owner was held entitled to a recovery. In *Pettigrew v. Evansville* (25 Wis. 223), a similar decision was made; the court saying:

" We cannot assent at all to the position of counsel, that because the ditch was not to be extended quite up to the plaintiff's line, and the water conducted upon his land in that manner, the injury was of that indirect and consequential kind for which the village is not responsible. It was an injury as direct as if such had been the mode in which the water was to be conducted, and there can be no rational ground for discrimination. He who sets in motion a destructive or injurious element, as fire or water, upon his own land, knowing that it must immediately pass upon the land of his neighbor to his damage, commits a direct injury, and cannot, as counsel seem to suppose, claim exemption from liability, or escape the consequences, on the ground that the wind blew the fire, or the law of gravitation caused the water to run. Availing himself of these agencies of nature, it is his direct act, as much as if he were to throw earth, gravel, stone, or other materials upon his own land, under circumstances where, without ceasing their motion, they would pass at once upon the land of his neighbor."

In *Fletcher v. Rylands* ( Law Reports, 1 Exchequer [1865–'6] *279), it appeared that the water of an artificially constructed reservoir burst through its bottom to a subterranean passage-way and flowed from thence through intervening land to a colliery, which it flooded to the collier's damage. It was held that a recovery could be had, even though the owners of the reservoir were guiltless of negligence; the court resting its decision upon the principle, applicable to a great variety of cases, that " the person who for his own purposes brings upon his lands, and collects and

keeps there, anything likely to do mischief if it escapes, must keep it in at his peril; and if he does not do so, is *prima facie* answerable for all damage which is the natural consequence of its escape.''

Nor is the rule different because the encroachment was not upon the land of the defendant in error. It was, however, upon the public highway, in which she, as an abutting lot owner, has a private interest. Of that interest she may not be deprived by any unlawful use of the highway by another. Elliott on Roads and Streets, 302.

The judgment of the court below is affirmed.