ERNST SCHMIDT, Respondent, v. EDWARD S. ROWSE *et al.*, Appellants.

### St. Louis Court of Appeals, April 2, 1889.

1. **Damages: DIVERSION OF SURFACE OVERFLOW.** In an action for damages for diverting the flow of surface water, so as to cause injury to the plaintiff's property, if it clearly appear from the evidence that the diversion was caused by the city's vacating an alley which had previously borne away the water and the establishing of a sewer of insufficient capacity to effect the same result, the plaintiff shows no right of recovery.

2. **Action: NON-OWNERSHIP OF SUPERIOR LANDS.** Where the defendants are sued, not as the owners or proprietors of lands from which the flow complained of proceeds, but only as trustees or managers thereof for certain purposes, which are shown to be the maintaining of drive-ways, alley-ways and semi-public areas in an aggregation of residence lots held by different owners, and it is not shown that any duty was ever assumed by such trustees to the public or to any one besides the respective owners of the lots, the plaintiff can have no right of action against them for negligence or injury connected with the use and management of the lots, or upon any assumption that they were bound to alter the system of drainage, so as to meet the changes caused by the vacating of the alley, or so as to supply the deficiencies of the sewerage provided by the city.

*Appeal from the St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

REVERSED AND REMANDED.

*Given Campbell* and *Arba N. Crane*, for the appellants.

The instruction offered by appellants, at the close of respondent's case, should have been given. Whatever may have been the injuries of the respondent his own case failed to connect the defendants with it, officially or otherwise. Their only witness on the subject, Maguire, obviously knew nothing and testified to nothing, taking his examination as a whole. The second

and sixth instructions offered by appellants should have been given. Rowse was not a commissioner, a manager, a trustee, nor was he in possession of Benton Place. The other defendants are not shown to have had anything to do with the respondent's grievance or to have known anything about the matter complained of. The appellants respectfully submit that the fact that they occupy elevated ground does not constitute any legal obstacle to their using and improving it without being liable to an adjoining owner for damages caused by the flow of surface water from the improved property. As was recently said by this court, "since the decision in *Abbott v. Railroad*, 83 Mo. 271, the rule in this state is well settled as to surface water in such cases. An owner may so improve his lands as to either increase or diminish the quantity of water which has previously flowed on adjoining lands and is not responsible to such adjoining owner for the damages caused by the improvement in in this respect." *Bird v. Railroad*, 30 Mo. App. 374. This is a case of surface water and not like *Mangold v. Railroad*, 24 Mo. App, 52, which was the case of a living natural stream. Hereof a distinction exists, namely, that diverting the latter is *per se* a nuisance, but not as to the former unless done carelessly and unskilfully. 83 Mo. 276; 57 Mo. 437–8. There is no evidence that the surface water in this case was made to run in increased quantities in the direction of the respondent. The appellants were entitled to an instruction as to the respondent's construction of his houses and the approaches to them and the grading and paving his yard; to defend against the surface water from the land above; he having had warning for years, and common prudence should have made him apprehend danger, whereas he negligently constructed his basement entrances and windows so as to have nothing to arrest the natural flow of surface water from Benton Place to and upon his premises, on and into his houses.

*Lubke & Muench*, for the respondent.

The petition stated a good cause of action in each count thereof, under the rule in force in this state concerning surface water, which is that although the common law rule on that subject obtains here, nevertheless, the superior proprietor has not " the right to collect the water in a body on his land and precipitate in a body or in greatly increased or unnatural quantities upon his neighbor to the substantial injury of the latter." *Schneider v. Railroad*, 29 Mo. App. 68 ; *Hoester v. Hemsath*, 16 Mo. App. 485. And there having been substantial evidence to sustain the allegations of the petition the court below rightfully refused appellants' instructions that plaintiff was not entitled to recover. The evidence abundantly showed that the water at each of these injurious floods was collected in a body and then forced upon plaintiff's property . As to other instructions asked by appellants and refused by the court, they were rightfully refused because such of them as state correct propositions were covered by the instructions given by the court of its own motion. When this is done, the refusal is not error. *Schaffner v. Leahy*, 21 Mo. App. 110.

THOMPSON, J., delivered the opinion of the court.

This action is brought against the defendants in their character of " trustees, managers, and in possession of a certain parcel of real estate known as Benton Place," in the city of St. Louis, to recover damages for collecting together the surface water falling upon said tract of land, diverting it from its natural course by means of ditches and embankments, and precipitating it in a body upon two certain lots belonging to the plaintiff, which have their front on Armstrong avenue and their rear on Benton Place. The petition contains two counts, for injuries to the two several lots of the plaintiff, but the ground of action and the nature of the

injury are the same in both counts. There was a trial before a jury and a verdict for the plaintiff under each count. From the judgment entered thereon the defendants prosecute this appeal.

This record has been gone over with care, and we must lay other questions out of view and determine this appeal upon the assignment of error that there was no evidence to support the verdict under either count of the petition. The evidence adduced at the trial indisputably showed that Benton Place was laid out as a private place, or collection of private residence lots, about eighteen years before the trial; that the driveways and alleys in Benton Place have never been dedicated to the public, but remain the private property of the owners of that place; and that the alleys which constitute the surface drainage of Benton Place were established and improved when the place was originally laid out. The evidence shows that the slope of the surface drainage of the area within what is known as Benton Place—an area of about six acres—is toward the northwest; that the place extends from Park avenue on the south to what is now Hickory street on the north; that the slope from south to north is very considerable; that on the west side of Benton Place, running from Park avenue on the south to within ninety feet of what is now Hickory street on the north, is an improved alley, sixteen feet wide, which was laid out and improved when Benton Place was improved; that the drive-ways from Park avenue into the interior of Benton Place, extend to the north around an oval plat of ground of small extent which is maintained as a sort of park; that the residences within Benton Place face inward upon this drive-way and overlook this park; that toward the north end of Benton Place an alley extends to the west, intersecting at right angles the alley which extends from Park avenue north on the west side of Benton Place to within ninety feet of Hickory street, as already stated. The evidence

makes it clear that a large portion of the surface drainage of Benton Place is collected in a body at the point where these two alleys intersect.   When Benton Place was originally laid out, and when these two alleys were originally established and improved, the drainage was entirely surface drainage.   At or near the point where these two alleys unite with an accumulation of surface drainage, there was a public alley continuing westward eighty-four feet to Armstrong avenue.   Evidence delivered by one witness called for the plaintiff and by one witness called for defendants—the latter an expert engineer, who laid out and improved the place under the direction of the then proprietors—is to the effect that this alley, leading into Armstrong avenue, afforded at that time an ample outlet for all the water accumulating at the intersection of the two alleys already spoken of.   These two alleys intersected at the southeast corner of the plaintiff's south lot.   The alley running westward into Armstrong avenue was a twenty-foot alley, and it lay immediately along the southern line of the plaintiff's ground.   This alley remained a public alley until the year 1884, when it was vacated by a city ordinance in consequence of which half of it fell to the plaintiff as his private property, and the other half to another lot owner to the south of the plaintiff. From the west side of Benton Place along the plaintiff's lots the downward slope to Armstrong avenue is quite steep.   In improving and building upon the plaintiff's lots, their grade was established with reference to Armstrong avenue, on which they fronted.   To this end it seems that they were excavated so as to leave a perpendicular wall of earth on their eastern end where they abut against the alley running north and south on the west side of Benton Place.   This wall was some five feet high, and the plaintiff had supported the earth with a wall of stone, which wall of stone extended southward to the middle of the vacated alley.   Subsequently to the improving of Benton Place with the

alleys already spoken of, the city, as we infer from the record, established a sewer two by three feet in dimension, under this now vacated alley. The surface water which comes down the two alleys from Benton Place, which unite in the rear of the plaintiff's lots as already described, now unable to pass down the vacated alley to Armstrong avenue, is collected in a sort of basin or depression and conducted into a sewer inlet, so as to run down this sewer under the vacated alley into the sewer which runs under Armstrong avenue. When the north and south alley running along the western margin of Benton Place was laid out, it was not practicable to extend it further to the north, because Hickory street had not been laid out at that time, and it would have been necessary to cast the water accumulated in it upon private ground or else to conduct this water in some way across private ground for six hundred feet to Chouteau avenue. Instead of doing this, the proprietors of Benton Place turned the whole flow to the west on the now vacated alley, so that it escaped by way of the surface drainage of Armstrong avenue. No trouble accrued to the plaintiff from this water drained by these alleys from Benton Place until after the east and west alley entering Armstrong avenue had been vacated by the city ordinance. After that he received damage from surface overflows at the junction of these two alleys in the rear of his lots, during a storm in May, 1885, during another storm in May, 1886, and during still another storm in September, 1886. The second and the last of these storms were characterized by most of the witnesses as "extraordinary," and the second, which took place in May, 1886, was attended with an unprecedented rainfall. In these two latter storms the rainfall was, during a portion of the time, so great that the sewage system of the city was unable to carry off the water, and it accumulated

in many places in the public streets doing much damage. The evidence is undisputed to the effect that the sewage system of the city is constructed on the plan of carrying away one inch of rainfall per hour; but if more than an inch of rain falls within a given hour, the sewage system of the city is not capable of conducting it away, and it accumulates in the streets. Such, the evidence tends to show (and on this point there is no contradictory evidence) was the case at the time when these two latter storms which caused the particular damage complained of by the plaintiff, took place. At the last of these storms the water assailed the plaintiff's premises with such violence as to tear down the stone wall for a considerable distance, overflow and destroy his garden, fill the cellar of one of his houses to a depth of two and one-half feet, and do substantial injury to his premises.

The situation of the plaintiff's premises with reference to Benton Place, to the intersecting alleys and to the vacated alley entering Armstrong avenue, will more fully appear from the accompanying sketch.

I.   We must say, on a careful examination of this record, that the evidence indisputably shows that it was not the system of surface drainage established by the proprietors of Benton Place, but the destruction of the natural outlet of this drainage by the vacation and cutting down the alley connecting with Armstrong avenue, already spoken of, which was the primary and efficient cause of the injury of which the plaintiff complains. The evidence does not show at whose instance the vacation of this alley took place. It presumptively took place in part at the instance of the plaintiff, for he appears to have partly acquired whatever benefit may have arisen from its being vacated, by being placed in possession of the north half of it. But there is nothing in the record which tends to show that the defendants were in any way connected with it, or which tends to raise an inference of a duty on their part to change the

ARMSTRONG AVENUE SEWER.

Sustaining Wall.

2x3 Brick Sewer.

Ernst
(Lot in 1st count.)

(Lot in 2d count.)

ALLEY.     INLET.     INLET.

PARK AVENUE.

BENTON

DRIVE-WAY.

PLACE.

DRIVE-WAY.

ALLEY.

ALLEY.

HICKORY STREET.

ALLEY.     INLET.     INLET.

The dotted lines South of Mr. Schmidt's Property indicate the vacated alley.

surf ace drainage of Benton Place so as to accommodate it in any way to the new state of things created by the vacation of this alley. . The city vacated this alley, over which the water escaped, and a sewer connection was made by some one ; so that while the Water now escapes in the same dire ction, instead of flowing *over* the surface it now flows *under* it. The plaintiff's witnesses disagree as to whether the sewer inlet through which the water escapes is a public or private inlet. The underground outlet is not sufficient to carry the water away in the time of an unprecedented storm, wherefore it overflows the plaintiff's premises. This is the cause of the injury of which he complains, and this seems to be all there is in his case.

II. Outside of this, there is another difficulty lying in the way of any recovery in this case. This action is not brou ght against the three defendants as private land-owners. It does not proceed on the theory that they have collected surface water in a body upon their own private lands and cast it upon the plaintiff's land. But it is brought against them as "trustees, managers, and in possession of" Benton Place. The evidence shows that one of them, Mr. Rowse, is not a so-called trustee of Benton Place at all, but that he officiates as secretary of the commissioners of Benton Place. The meager evidence as to the office and duties of the commissioners of Benton Place is to the effect that they are elected by the private property-owners of Benton Place, whom they serve voluntarily ; that their duty as such commissioners is to maintain the drive-ways, alley-ways, and, in general, the semi-public portions of Benton Place, for which purpose they collect of the several proprietors of that place an annual contribution of fifty cents per front foot of their respective lots. They are not in possession of the private property included in Benton Place, except their own respective portions of it. There is not a particle of evidence in this record tending to show that either one

of the defendants was a trustee or manager or in posses-
sion of the roadways and alley-ways of Benton Place at
the time when these alley-ways and this system of
surface drainage were established.   Nor is there any
evidence that anything has been done by these defend-
ants, or by any of them, in connection with the road-
ways or alley-ways of Benton Place, changing in any
manner the system of surface drainage of that place as
it was originally established eighteen years before the
trial.   There is no evidence in this record tending to
raise any duty on the part of these defendants toward
the plaintiff or toward any other property-owner save
those in Benton Place, in respect of their care of the
road-ways, alley-ways, or drainage system of that place.
The plaintiff seeks to charge them on the theory of
negligence ; but as they have assumed no duties, so far
as the evidence shows, except toward the proprietors of
Benton Place, of which the plaintiff is not one, if they
are guilty of non-feasance, they are answerable only to
their principals, and not to the plaintiff.   *Harriman v.
Stowe*, 57 Mo. 93.   They can only be answerable to him
upon the theory of being trespassers.   If they have, by
their affirmative action, collected together in Benton
Place a mass of surface water, and precipitated it upon
the plaintiff's land, they are liable to him in damages
as trespassers ( *Schneider v. Railroad*, 29 Mo. App. 68 ),
although in so doing they may have acted with the view
of serving the proprietors of Benton Place.   *Martin v.
Benoist*, 20 Mo. App. 262.   But there is no evidence
whatever in this record—not a line—that they or either
of them has ever done this by any affirmative act.
There is no evidence showing at what time the defend-
ant Rowse became the secretary of the commissioners of
Benton Place ; nor is there any evidence as to the time
when the defendants Jackson and Huse became commis-
sioners of that place.   There is nothing in the record
upon which to support this action, unless it could be

supported on the vague idea that these three gentlemen, by reason of having assumed certain duties toward the proprietors of Benton Place, have in some way or other incurred the obligation of altering the system of drainage of that place, so as to meet the change of circumstances produced by the vacation of the alley connecting with Armstrong avenue, and so as to supply the deficiencies of the sewage system of the city of St. Louis.

This action must, then, fail, upon either of two grounds: (1) Upon an uncontradicted state of evidence, delivered in part by a witness for the plaintiff, showing that the efficient cause of injury which happened to the plaintiff was the vacation of the alley connecting with Armstrong avenue, and the deficiency of the system of sewerage established by the city of St. Louis. (2) An entire failure to connect these defendants with the injury which the plaintiff has received.

The judgment will be reversed and the cause remanded. It is so ordered. All the judges concur.