WILLIAM WATSON, Administrator, etc., Appellant, *v.* THE
CITY OF KINGSTON, Respondent.

In pursuance of ordinances duly passed by defendant's common council,
establishing the grade of one of its streets, which was cut along the side of
a hill, and directing the manner of construction, a dry wall was laid to
carry the street up to grade in front of the premises of E., plaintiff's intes-
tate, which were on the lower side of the street.   By such ordinances the
owner of abutting property was given the privilege of constructing a wall
of masonry, but E. refused to avail herself of this permission or to pay
for cement in which to lay the wall.   Subsequently water came down the
gutter on the lower side of the street and passed through the gutter and
wall onto said premises, causing damage.   In an action to recover there-
for, it did not appear that said premises were subjected to any further
burden in reference to surface-water than they were required to bear
when in their natural state, *held*, that defendant was not liable; that in
establishing the grade and adopting plans for the improvement of the
street the common council acted judicially, and in the exercise of the dis-
cretionary power vested in it, and for such acts an action would not lie;
also, that the action could not be sustained upon the theory of negligent
or unskillful construction of the wall.

The ordinances required the sidewalks, curbs and gutters to be constructed
by the abutting owners or occupants.   E. constructed the gutter in front
of her premises, using cobble-stones, instead of flat stone, as contemplated
by the ordinance, and the water flowed through between the cobble-
stones and thence through the wall.   *Held*, that, in the absence of proof
establishing that defendant's officers or agents had interfered with the
gutter after it was laid, E., not the defendant, was responsible for the
improper construction of the gutter.

Reported below, 43 Hun, 367.

(Argued March 25, 1889; decided April 16, 1889.)

APPEAL from judgment of the General Term of the Supreme
Court in the third judicial department, entered upon an order
made February 13, 1887, which affirmed a judgment in favor
of defendant, entered upon an order nonsuiting plaintiff on
trial.

This action was brought originally by Esther Watson, the
present plaintiff's intestate, to recover damages to her premises
in the city of Kingston, alleged to have been caused by
defendant's negligence and unlawful acts.

The material facts are stated in the opinion.

*S. L. Stebbins*'for appellant. The defendant was not justi-
fied by the fact that the dry retaining wall was provided for
in its plan or specifications. The destruction of half the value
of the plaintiff's premises by turning the water from the street
upon them was a taking of private property for public use
without compensation. (*Seifert* v. *City of Brooklyn*, 101
N. Y. 136.)

*John J. Linson* for respondent. The differences claimed to
exist between the work as done and that required by the ordi-
nance were too minute to furnish foundation for this action.
(*In re M. L. Ins. Co.*, 89 N. Y. 530.) Where power is con-
ferred upon a municipal corporation to make local improve-
ments, its exercise is *quasi* judicial or discretionary, and for
a failure to act, or an erroneous estimate of the public needs, a
civil action cannot be maintained against it. (*Urquhart* v.
*City of Ogdensburg*, 91 N. Y. 67; *Wilson* v. *Mayor, etc.*,
1 Denio, 595; *Radcliff* v. *Mayor, etc.*, 4 N. Y. 195; *Mills* v.
*Brooklyn*, 32 id. 489; *Lynch* v. *Mayor, etc.*, 76 id. 60;
*Rutherford* v. *Village of Holley*, 105 id. 632; *Heiser* v. *Mayor,
etc.*, 104 id. 68.) The plaintiff's rights are such as had accrued
prior to the commencement of the action. (*Blunt* v. *McCor-
mick*, 3 Denio, 283; *Duryea* v. *New York*, 26 Hun, 120;
*McKeon* v. *Lee*, 4 Robt. 470; *Uline* v. *R. R. Co.*, 23 Week.
Dig. 204.) Where, by the exercise of slight care, by taking
a little precaution, damage can be avoided, it is the duty of
one so to do, and if he fails in this respect, he cannot hold
another liable for acts which were within the scope of the lat-
ter's legal power. (*Hoehl* v. *Muscatine*, 57 Iowa, 444; *Tall-
man* v. *Muscatine*, Id. 457.)

HAIGHT, J. The complaint, in substance, alleges that the
plaintiff is the owner of a house and lot in the city of Kingston
on the north-east corner of Ravine and German streets; that
the defendant, in grading Ravine street, proceeded irregularly
and without authority of law; that in so doing the city built a
wall and embankment in front of the plaintiff's premises

rendering access thereto difficult and inconvenient ; that the wall and embankment was constructed so negligently and unskillfully as to cause and permit the water, which would otherwise have passed down Ravine street without injury to the house and premises of the plaintiff, to flow into and upon the same to their injury ; that in such grading, the defendant wrongfully and illegally gathered and collected large quantities of water which otherwise would not have reached the plaintiff's premises, and had been accustomed to flow elsewhere, and caused the water to flow down Ravine street until near the premises of the plaintiff, and then by negligently and unskillfully omitting to provide safe, sufficient and proper means for carrying the water, and by negligent and unskillful grading of the street caused the accumulated water to flow across the street and into and upon the house and premises of the plaintiff.

Ravine street is cut along the side of a hill, ascending the same at a steep grade ; Spring and Spruce streets cross the same as the street ascends the hill. The plaintiff's house is located on the lower side of Ravine street. In 1879, the common council of the defendant passed an ordinance establishing the grade of that portion of Ravine street lying between German and Pierpont streets, and, in May, 1883, passed another ordinance, directing that that portion of Ravine street be graded according to the established grade theretofore fixed by the ordinance of 1879, and in accordance with the plans and specifications theretofore prepared by the city engineer and approved by the common council. And, at the same time, passed another ordinance directing that sidewalks be constructed upon the street ; that the same be curbed and guttered according to the specifications contained in the ordinance, and that the same be done by the owners or occupants of lands abutting thereon, and, if not so done by them within a specified time, that it should be done by the common council at the expense of the owners or occupants respectively. The specifications for the grading of Ravine street, prepared by the engineer and approved by the common council, pro-

vided that where lots or buildings are based upon lower levels than the established grade, that the grade and sidewalk should be supported by a dry wall of stone, so as to prevent the earthwork from extending beyond the street line and to avoid encroachment upon the basements of buildings. The specifications further provided that the property owners should have the privilege of constructing a wall of masonry in lieu of the dry wall provided for in the specifications.

The evidence tends to show that the plaintiff's premises were at a lower grade than that established for the street, and that in front of the plaintiff's house a dry wall was constructed; that, subsequent to the grading, water came down the street, penetrated through the gutter and wall so constructed onto the plaintiff's premises, causing her considerable damage.

Our attention has been called to no irregularity in the proceedings or ordinances of the common council, tending to show that the grading of Ravine street was without authority of law, and we shall, consequently, assume that such proceedings and ordinances were regular and valid. The plaintiff's house had been built upwards of thirty years, before a grade had been established for Ravine street, and, consequently, no cause of action will lie because of the establishing of the grade of the street higher than the plaintiff's lot.

The duty devolved upon the municipality of establishing a grade for the street, and of so working and improving it as to make it safe and convenient for the passage of the public. In establishing the grade and adopting plans for the improvement of the street, the common council acted judicially in the exercise of its judgment and of the discretionary power vested in it, as to what would best serve the public interest; and the rule is that a civil action will not lie for acts that are judicial in their character, and discretionary. (*Urquhart* v. *City of Ogdensburg*, 91 N. Y. 67.)

The wall that was built in front of the plaintiff's premises was a part of the plan approved by the common council for the improvement of the street. Its object was to prevent the earth-work from extending beyond the line of the street

and encroaching upon the plaintiff's premises. No other or better plan has been suggested, nor is it claimed that there was any error in the judgment or discretion of the common council in approving it. In adopting it they acted judicially, and it follows that no recovery can be had on account of the inconvenience occasioned by it.

It is claimed that the defendant wrongfully and illegally gathered and collected a large quantity of water from distant territory and caused the same to flow down upon the plaintiff's premises. It must be borne in mind that the plaintiff's premises are located upon the side of a steep hill or ravine, and that the flow of water is downward, and that in a state of nature the plaintiff's lands must take the surface-water that flows from the lands above. The evidence shows that water collected upon the surface of the streets does flow down Spring and Spruce streets to their intersection with Ravine street. It further appears that at the intersection of Spring and Ravine streets there are two sewers, of sufficient capacity to receive and convey away all of the water collecting at that place except, perhaps, on one or two occasions of great freshets, when brush and other debris had washed down and temporarily clogged or closed the sewers. The only water collected, which flows down by the plaintiff's premises, is that collected upon the surface of the road-bed between the point of the intersection of Spring street and the plaintiff's premises, except on the occasions alluded to. There is nothing in this collection of water that differs from that which is necessary in the construction of all streets and road-beds; and it does not appear that the plaintiff's premises are subjected to a further burden in reference thereto than they were required to bear when they were in a natural state.

Some evidence was given with the view of showing that the street was not graded in accordance with the plans and specifications provided for in the ordinance. The grade, as established by the ordinance, was for the center line of the street. The survey made by the plaintiff's engineer was at the curb of the street instead of at the center. It is, consequently, not

surprising that some variations should be found to exist. But however that may be, the witness, in closing his testimony, disposes of this branch of the case by testifying that the street was graded substantially according to the requirements of the ordinance, except slight variations at some points.

We now approach the consideration of a more serious question, and that is as to whether the wall and gutter were so negligently and unskillfully constructed as to permit the water to flow through them onto the plaintiff's premises. The judicial discretion which shields the municipality from liability in the establishing of the grade, or adopting the plans for improving the street does not extend to negligent or unskillful workmanship. Watson, the plaintiff's husband, testified that " the place where the water came in was through my gutter at the upper corner of the lot." He further testified that it flowed through the dry stone wall onto their premises, doing the damage complained of. It thus appeared that the water that did the damage complained of was the water flowing through the gutter upon the eastern side of the street, and that when it got opposite of the plaintiff's premises it flowed or percolated through the gutter and wall onto the same.

The first question to be considered is whether the wall was negligently constructed. It is conceded that it was laid up dry without cement, except for a small portion thereof ; but a dry wall was all that was called for by the specifications approved by the council. Some evidence tends to show that some portion of it was constructed of slate stone, which would slacken and crumble to pieces, but no evidence shows that any of the stone of the wall had so crumbled to pieces. Other evidence was given on behalf of the defense tending to show that the wall was constructed of good material, in a good, workmanlike manner. In case of conflict of testimony the facts, if material, should be determined by the jury. But, under the view which we take of the case, the conflict in the testimony at this point becomes unimportant. A dry wall cannot well be constructed so as to be water-tight, and it does not appear to have been within the contemplation of the

parties that it should be so constructed. The specifications prepared by the engineer and approved of by the council, gave to the owner of the abutting property the privilege to construct the wall of masonry. The plaintiff had this privilege, but she refused and neglected to avail herself of it. The contractor who built the wall for the city was willing to lay it up in cement, provided the plaintiff would furnish the cement. He had even procured the cement and had laid some of the wall in it when the plaintiff refused to pay therefor, and the contractor consequently laid up the rest of the wall dry in accordance with the specifications. In view of these facts, the claim based upon the theory of negligent and unskilled construction of the wall cannot be sustained.

In the second place the gutter was improperly constructed. It was made of cobble-stone, and the water, running along the gutter of the street, would flow down between the cobble-stone composing the gutter and thence through the wall. It does not, however, appear that the city is responsible for the construction of the gutter. The ordinance requiring the construction of sidewalks, curb and gutters for the city, required the construction to be made by the owners or occupants of lands abutting upon the street. The plaintiff, through her husband, constructed the gutter in question, using cobble-stone instead of flat stone fourteen inches wide as contemplated by the ordinance. He complains that there was not earth enough to properly lay and embed the cobble-stone in the gutter. If so, then he should have procured more earth, for, under the ordinance, the plaintiff was to construct the gutter at her own expense, and the city did not undertake to furnish the material necessary therefor. Watson tells us, however, that after he had laid the gutter he went to Philadelphia, and on his return he found that it had been taken up, raised higher and had been relaid. It does not clearly appear by whom the gutter was taken up and relaid, and the question as to whether it was taken up at all is in dispute, for Pervius, who was at the time alderman and one of the committee on streets, and was in charge of the work, testified that the gutter put in by Watson was not interfered

Statement of case.

with at all ; that the only change that was made was in raising the curb higher, and that this was done before the gutter was put in. If the gutter was, in fact, put in by the city, then a question would be presented for the consideration of the jury, for it is not claimed to have been properly constructed by either party. Watson, however, does not pretend to know who relaid the gutter ; he says it was done in his absence. The duty of constructing the gutter, under the ordinance, devolved upon the plaintiff ; the plaintiff furnished the material and constructed the same; the plaintiff has failed to show that it has been since tampered with by the defendant or any of its officers or agents. If the gutter was relaid, whoever did it appears to have used the same cobble-stone, and it does not appear but that the work was as well done as it was in the first instance by the plaintiff.

We are, consequently, of the opinion that the judgment should be affirmed, with costs.

All concur, except FOLLETT, Ch. J., not voting, and PARKER, J., not sitting.

Judgment affirmed.