Champion vs. The Town of Crandon.

CHAMPION, Appellant, vs. THE TOWN OF CRANDON, Respondent.

*February 25 — March 21, 1893.*

*Municipal corporations: Diversion of surface water by work on streets.*

1. A town has the right to change the natural flow of surface water by improvements and works on its streets or highways, entirely within their limits, even though such water is thereby caused to flow upon adjoining lands.

2. The fact that the work in such a case was done negligently or upon a defective plan does not give the owner of the adjoining land a right of action for injuries resulting from such diversion of the surface water thereto.

Champion vs. The Town of Crandon.

APPEAL from the Circuit Court for *Forest* County.

This is an action to recover for damages sustained by the plaintiff by reason of the alleged negligent, careless, and unskilful manner and defective plan upon which the streets and highways in the village of Crandon had been constructed near plaintiff's house, by which the surface water falling upon said streets and highways of the defendant town was diverted from its natural course towards the house and upon the premises of the plaintiff. The complaint alleges, in substance, that the house was built of good material and in a workmanlike manner, at a cost of $1,500, and had a safe and sufficient cellar under it for the storage of vegetables and goods; that the defendant town, by and through its supervisors, did certain road work upon the streets and highways near the plaintiff's house in a negligent, careless, and unskilful manner, and upon a very defective plan, by means of which the surface water arising from the rains and melted snows falling upon said streets and highways was diverted from its accustomed course, and, falling upon said streets and highways, by said work was caused to flow towards the house and into the cellar of the plaintiff, to his great damage; that in three succeeding years thereafter said town continued to do road work in a negligent, careless, and unskilful manner, and upon a very defective plan, upon said streets and highways, by which the water falling thereon was more and more diverted from its natural course and towards the plaintiff's house, and the town board of said town utterly refused to protect plaintiff's house from the flow of water artificially turned upon it, or to provide a channel and outlet by which it could escape from said house, although repeatedly urged by the plaintiff to give him relief from said surface water; that by reason of the premises the plaintiff had suffered damages by injuries to said house and the contents of its cellar, and it was inconvenient and often nearly impossible

Champion vs. The Town of Crandon.

for him to carry on his business in the lower story of said house, so that his customers could not enter the same to purchase goods, and that his trade was seriously injured, the water often standing to the depth of more than one foot in places; and claimed damages in the sum of $500. The defendant demurred to the complaint. The court sustained the demurrer, and the plaintiff appealed.

*Samuel Shaw*, for the appellant, as to the liability of the town in a case like this for the result of negligence in doing the work, cited 2 Dillon, Mun. Corp. sec. 1051, subd. 4.

For the respondent there was a brief by *E. Wyman* and *Alban & Barnes*, and oral argument by *John Barnes*. They cited, besides cases cited in the opinion, *Hanlin v. C. & N. W. R. Co.* 61 Wis. 515; *O'Connor v. F., A. & P. R. Co.* 52 id. 526; 2 Dillon, Mun. Corp. secs. 1039-40, 1043-46.

PINNEY, J. In *Hoyt v. Hudson*, 27 Wis. 656, it was settled that cities, towns, and villages, as owners of lands for highways and other public purposes, have the same rights as private owners to obstruct or repel the flow of surface water collecting thereon from snow and rain. *Pettigrew v. Evansville*, 25 Wis. 223. In *Allen v. Chippewa Falls*, 52 Wis. 433, COLE, C. J., says: "It seems needless to observe that the city, under its charter, had the undoubted right to establish the grade of its streets, and in the execution of the grade the existing drainage of surface water might be changed or destroyed." Towns clearly have the same rights. In *Hoyt v. Hudson, supra,* the right of a proprietor to divert surface water falling on his land so that it may be cast or flow upon the land of a proprietor on a lower level seems to be denied upon the authority of *Pettigrew v. Evansville, supra*. But the question here involved was not presented in that case, and the case itself has since been limited and explained in *Heth v. Fond du Lac*, 63 Wis. 228, in which many later cases in this court

Champion vs. The Town of Crandon.

are cited. In *Pettigrew v. Evansville* the defendants pro-
posed, by digging a ditch, to drain the waters of a natural
reservoir which gathered into it from a considerable dis-
tance from the surface of the surrounding country, and
thence escaped only by percolation or evaporation, and
turn them immediately upon the plaintiff's land, to his
great injury, and for the purpose of draining such standing
water in and upon the plaintiff's premises, when it was not
necessary to drain said water either to improve the streets
of the village or for any purpose connected with the duties
of that corporation; and it was said by the court: "This is
a direct injury, as direct as if the defendants had proposed,
without compensation, to throw upon the plaintiff's land
earth, gravel, stone, or other material, which it became nec-
essary for them to remove from the street in order prop-
erly to improve it." While the town, through its authori-
ties and agents, would not be authorized to collect a body
of surface water and cast it, or a body of water already
collected, in a channel made for that purpose, in a consid-
erable stream or volume, on the lands or lots of a proprie-
tor adjoining a public street, it clearly has the right to
determine the grade of its streets or highways, and to con-
struct gutters along them, and culverts under or across
them, not entering upon or disturbing the soil of the ad-
joining proprietor, in order to drain from the streets and
highways or public grounds surface waters which have
fallen or flowed over or upon the same. There is in such
case no direct invasion of the proprietary rights of the lot-
owner, and the inconvenience which he suffers is purely
consequential and the result of the lawful exercise of a
power necessarily vested in the town or city for public pur-
poses. *Radcliff's Ex'rs v. Mayor of Brooklyn*, 4 N. Y. 195.

In *Heth v. Fond du Lac*, 63 Wis. 228, it was declared,
after a review and citation of numerous authorities in this
and other states: "The resident owner of a lot fronting

upon a public street in a city cannot be permitted to restrain such municipality from constructing drains along the sides or culverts across the street or other streets in the vicinity, or from grading the same, merely because such acts, when completed, would greatly increase the flow of surface water upon his land;" and it necessarily follows that such acts are not actionable. It was there declared that "the same is true with respect to an adjoining landowner changing the surface of his land, or placing obstructions or embankments thereon to change the course of surface water;" and that "this is plainly the rule of the common law, as distinguished from the civil law." *Waters v. Bay View*, 61 Wis. 642; *Lessard v. Stram*, 62 Wis. 112; *Johnson v. C., St. P., M. & O. R. Co.* 80 Wis. 641.

It is impossible, we think, to maintain that any difference exists in principle between the right to so dispose of surface water which may flow over and upon the streets or public grounds of a town or city or the property of a private proprietor and that which falls upon such places in rain or snow. The rule thus laid down is supported by numerous decisions of courts of the highest authority. *Flagg v. Worcester*, 13 Gray, 601; *Turner v. Dartmouth*, 13 Allen, 291; *Emery v. Lowell*, 104 Mass. 13, 16; *Lynch v. New York*, 76 N. Y. 60; *Lee v. Minneapolis*, 22 Minn. 13; *Wakefield v. Newell*, 12 R. I. 75; *Imler v. Springfield*, 55 Mo. 119.

In *Gannon v. Hargadon*, 10 Allen, 109, it is laid down that "the right of an owner of land to occupy and improve it in such a manner and for such purposes as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners that an alteration in the mode of its improvement or occupation in any portion of it will cause water which may accumulate thereon by

rains or snows falling on its surface either to stand in unusual quantities on other adjacent lands or pass into and over the same in greater quantities or in other directions than they were accustomed to flow." *Rathke v. Gardner*, 134 Mass. 15; *Bates v. Westborough*, 151 Mass. 182.

In *Rawstron v. Taylor*, 11 Exch. 369, MARTIN, B., said: "The owner of the soil has *prima facie* the right to drain his land. He is at liberty to get rid of the surface water in any manner that may appear most convenient to him; and I think no one has a right to interfere with him, and that the object he may have in so doing is quite immaterial." And PLATT, B., said: "This was mere surface water, and the defendant is entitled to get rid of it in any way he pleases." In *Grant v. Allen*, 41 Conn. 156, it was said that "the right of the owner of land to determine the manner in which he will use it or the mode in which he will enjoy it, the same being lawful, is too high in character to be affected by considerations growing out of the retention, diversion, or repulsion of mere surface water, the result of falling rain or melting snow; " and in *Chadeayne v. Robinson*, 55 Conn. 350, the general common-law rule in reference to surface water, as laid down by Gould on Waters, sec. 267, in substance as declared in *Gannon v. Hargadon*, 10 Allen, 109, is approved; and in *Goodale v. Tuttle*, 29 N. Y. 467, it was said by DENIO, C. J.: "In respect to the running off of surface water caused by rain or snow, I know of no principle which will prevent the owner of land from filling up the wet and marshy places on his own soil for its amelioration and his own advantage because his neighbor's land is so situated as to be incommoded by it. Such a doctrine would militate against the well-settled rule that the owner of land has full dominion over the whole space above and below the surface." Washb. Easem. 455; *Peck v. Goodberlett*, 109 N. Y. 180; *Swett v. Cutts*, 50 N. H. 439. And in Wood on Nuisance, sec. 398,

after noticing the conflict of opinion upon this point, it is said, after an extended review of the cases, that " it is safe to say that the weight of authority sustains the idea that lower estates are burdened with a servitude in favor of a higher one for the discharge of the water that falls upon its surface and naturally escapes over the lower estate; and the owner of the higher may, if he sees fit, prevent the water from going there, or deal with it as he pleases, so that he does not change the mode or volume of its escape." Any other rule on the subject, it seems to us, would not only unduly fetter the power of towns and cities over the necessary drainage of highways and streets, but would interfere materially with the improvement and development of lands for agricultural and other purposes.

In this case the substance of the allegation is that the surface water, by reason of the road and street work done by the defendant near plaintiff's premises, and falling upon such streets and highways of the defendant, was *diverted from its usual course of flow* while the surface of the ground upon such streets and highways *was left in a state of nature*, and caused to flow into and upon the plaintiff's premises, to his damage, etc. To maintain this action would be to hold that the town could not change such natural flow of surface water by its improvements and works upon the streets wholly within their limits without becoming liable to repeated actions for damages, or being enjoined from maintaining their works while they caused such injuries. It is not alleged that the change of grade was made without any fair or reasonable advantage to result to the public, or wantonly, in order to injure the plaintiff. The allegation that the work was done upon a defective plan will not suffice to enable the plaintiff to maintain his action. The power of the supervisors to determine upon a plan and method of improving streets and highways, and providing for the removal of surface water,

is a discretionary one, and a mere error of judgment in respect to the plan will not subject the town to an action for damages. To hold otherwise would be practically to take the power to decide such questions from the officers in whom the law has vested it, and subject their determination to review, where there might be no very material or considerable difference of opinion. The authorities are numerous that the determination of the public authorities upon the plan for doing such a public work is conclusive. *Urquhart v. Ogdensburgh*, 91 N. Y. 67; *Lansing v. Toolan*, 37 Mich. 152; *Monk v. New Utrecht*, 104 N. Y. 561; *Watson v. Kingston*, 114 N. Y. 91; *Paine v. Delhi*, 116 N. Y. 228.

The allegations of negligence in doing the work in question, and upon a defective plan, are wholly ineffectual, inasmuch as the result complained of is one which the defendant had a lawful right to accomplish, namely, to free the streets and highways and public grounds of the town from surface water, even though its former course should be changed, and it should flow, in consequence, over and upon the premises of the plaintiff, an adjoining proprietor. The demurrer was well taken, and was properly sustained.

*By the Court.*— The order of the circuit court is affirmed.

See note to this case in 19 L. R. A. 856.— REP.

