## SADLIER et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   April 28, 1905.)

1. EQUITY—JURISDICTION—JUDGMENT FOR DAMAGES ONLY.

   Where plaintiff sued for an injunction and for damages for trespass, and defendant answered that plaintiff had an adequate remedy at law, a judgment rendered by the special term for damages only was erroneous, though defendant noticed the case for trial at the Special Term.

2. MUNICIPAL CORPORATIONS—CARE OF PUBLIC STRUCTURES—TRESPASS—LIABILITY.

   The fact that the Legislature authorized the construction of the New York and Brooklyn Bridge by the municipality does not relieve it from liability for a trespass committed in the administration of the bridge.

3. SAME—EVIDENCE.

   Evidence that persons caring for a bridge belonging to defendant city swept débris from the bridge so that it fell on the roof of plaintiffs' house, justified a finding that such act constituted a direct trespass.

4. SAME—PROXIMATE CAUSE.

   Where, in cleaning a bridge belonging to defendant city, its employés swept débris from the bridge so that it fell on plaintiffs' house, the fact that the house was 20 feet distant from the base of a vertical line dropped from the edge of the bridge did not render the air currents which carried the débris onto plaintiffs' premises a superseding cause relieving the city from liability for the trespass.

5. BRIDGES—CARE REQUIRED OF CITY.

   The construction of the New York and Brooklyn Bridge having been authorized by the Legislature, and the bridge itself constituting a highway, the obligation of the city of New York with respect to its care is to be determined with regard to the duties of the city as to highways or streets, modified by the consideration that the bridge is not on the surface of the earth.

6. SAME—SURFACE WATER.

   Under evidence showing that it was not feasible to so construct the New York and Brooklyn Bridge as to prevent water from rain and melting snow from flowing and being blown by the wind from the sides thereof onto houses below, the city of New York is not liable for damages to a house caused by the falling of such water.

Appeal from Special Term, Kings County.

Action by Annie M. Sadlier and another against the city of New York. From a judgment for plaintiffs (81 N. Y. Supp. 308), defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

James D. Bell, for appellant.

Jesse W. Johnson (Albert E. Lamb, on the brief), for respondents.

JENKS, J.   The structure of the New York and Brooklyn Bridge passes at 80 feet above the building of the plaintiffs.   A vertical line from the southerly side of the structure nearest the premises would

fall 20 **feet** distant northerly therefrom. The plaintiffs allege that débris and water from the roadway of the bridge come onto the premises.· They complain of a continuous trespass, and sue for an injunction from such use and maintenance of the bridge as to cause it, except on the condition that the defendant purchase or condemn the plaintiffs' premises, and that it pay $25,000 past damages. The Special Term adjudged only that the plaintiffs recover a sum of money as damages. I think that we must reverse the judgment on the authority of Western Union Tel. Co. v. Syracuse El. L. & P. Co., 178 N. Y. 325, 329, 70 N. E. 866. The fact that the defendant noticed the case for trial at the Special Term under its stipulation does not affect the rule. Wheelock v. Lee, 74 N. Y. 495, 500. See Davidsburgh v. Knickerbocker Life Ins. Co., 90 N. Y. 526, 530. As was said in Wheelock v. Lee, supra:

"The case in one of its aspects was triable at Special Term, and, had the plaintiff elected to rely solely on his equitable cause of action, he could have proceeded with the trial there."

The defendant answered that the plaintiffs had full and adequate remedy at law. Before the judgment it could not, of course, raise the point now made that, the court having refused all equitable relief; this judgment could not stand.

The learned and elaborate opinion at Special Term relieves me from discussion of many of the legal principles invoked or involved in this case. The authorities are clear that some of the acts complained of may constitute trespass, which, if committed in the administration of the bridge, cast liability upon the defendant, irrespective of any question of its negligence. Lambert v. Bessy, Sir T. Raymond, 421; Hay v. The Cohoes Co., 2 N. Y. 159, 51 Am. Dec. 279; St. Peter v. Denison, 58 N. Y. 416, 17 Am. Rep. 258; Sullivan v. Dunham, 161 N. Y. 290, 55 N. E. 923, 47 L. R. A. 715, 76 Am. St. Rep. 274; Seifert v. City of Brooklyn, 101 N. Y. 136, 4 N. E. 321, 54 Am. Rep. 664; Huffmire v. City of Brooklyn, 162 N. Y. 584, 57 N. E. 176, 48 L. R. A. 421. The fact that the Legislature authorized the bridge, and that it was constructed within such authority, does not shield the defendant from liability in such a case. Bohan v. P. J. G. L. Co., 122 N. Y. 18, 25 N. E. 246, 9 L. R. A. 711; Hines v. City of Lockport, 50 N. Y. 236; Seifert v. City of Lockport, supra; Huffmire v. City of Brooklyn, supra. The rule invoked by the defendant, as enunciated in cases like Uppington v. City of New York, 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550, does not obtain, inasmuch as in this case there is a direct invasion—a continuous trespass upon private property. The limitation is expressed in the various authorities which lay down the rule, and the discrimination is made in such cases as St. Peter v. Denison, supra; Losee v. Buchanan, 51 N. Y. 476, 10 Am. Rep. 623. Acts akin to those complained of may constitute a taking of private property. Cooley on Constitutional Limitations, 671; Pumpelly v. Green Bay Co., 13 Wall. 166, 20 L. Ed. 557; Garvey v. Long Island Railroad Co., supra; Aiken v. B. C. & M. R. R. Co., 51 N. H. 504. The plea that the acts complained of are directly au-

thorized by the Legislature cannot, in any event, avail the defendant, inasmuch as there is no direct statutory expression to show that the Legislature "intended and contemplated the doing of the very act in question." Morton v. Mayor, etc., of New York, 140 N. Y. 207, 212, 35 N. E. 490, 22 L. R. A. 241. The assumption is that the Legislature intended that the work of clearing the roadway should be done without such acts of trespass (Randolph on Eminent Domain, § 140, cited by Vann, J., in Garvey v. Long Island Railroad Co., supra); and the evidence is that this work is directed to be done in a manner that does not require any trespass, inasmuch as the débris is collected and carried away in carts every day. It therefore is unnecessary to discuss the question whether the Legislature, limited by the Constitution, and not omnipotent, like Parliament, could authorize acts of direct trespass. As to this, however, see Cogswell v. N. Y., N. H. & H. R. R. Co., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701; Aiken's Case, supra; Garvey's Case, supra; Dyett v. Hyman, 129 N. Y. 351, 29 N. E. 261, 26 Am. St. Rep. 533; Levy v. Dunn, 160 N. Y. 504, 55 N. E. 288, 73 Am. St. Rep. 699. I do not believe that the defendant with immunity can sweep débris off the bridge, so that, when thus cast off into the currents of the air, it falls upon the premises of the plaintiffs. One of the witnesses testifies that the débris drops upon the plaintiffs' roof "because the man pushing a broom gives it a momentum, and it naturally cants away in the same direction, the same as a bullet would, or anything." There is other evidence to the same effect, and I cannot say that the finding of the Special Term that the acts are a direct trespass should be disturbed. Lowery v. Erskine, 113 N. Y. 52, 20 N. E. 588. It cannot be contended that, inasmuch as the premises are 20 feet distant from the land point of a vertical line dropped from the bridge, the currents of air which help to carry this débris onto plaintiffs' premises are a superseding cause. Webb v. R., W. & O. R. R. Co., 49 N. Y. 420, 10 Am. Rep. 389; Milwaukee, etc., Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Dunsbach v. Hollister, 49 Hun, 352, 355, 2 N. Y. Supp. 94, affirmed 132 N. Y. 602, 32 N. E. 1152.

The New York and Brooklyn Bridge is a municipal work of the two cities, prosecuted in their behalf by municipal officers (Cullen, J., in People ex rel. Baird v. Nixon, 32 App. Div. 513, 53 N. Y. Supp. 230, affirmed 158 N. Y. 221, 52 N. E. 1117), and "is a public highway for city purposes" (Bartlett, J., in said affirmance). As the Legislature authorized the structure for public purposes in the exercise of its governmental powers, it is not per se a nuisance. Sauer v. City of New York, 180 N. Y. 27, 72 N. E. 579, per Haight, J. I think the obligation of the defendant must be determined with regard to its duties as to the highways or streets of the city, modified by the consideration that this bridge is not on the surface of the earth, but lawfully above it. The court finds that "water and snow accumulate on the wagon road of said bridge, and on the southerly side thereof, and, mingling with the said chips, shreds, splinters, and with filth, refuse, and manure thereon, form muck, slush, and filth, which flows and falls onto the roof

and against the sides and windows of said building, the side of the said bridge not being inclosed, guarded, or provided with a gutter to prevent it." But I do not find any evidence that the condition of the roadway in respect to surface water (and this term includes melting snow—Crawford v. Rambo, 44 Ohio St. 282, 7 N. E. 429; Case v. Hoffman, 84 Wis. 444, 54 N. W. 793, 20 L. R. A. 40, 36 Am. St. Rep. 937; Gray v. McWilliams, 98 Cal. 163, 32 Pac. 976, 21 L. R. A. 593, 35 Am. St. Rep. 163) is different from that of any other highway subject to similar meteorological conditions. There is no proof that the defendant swept off or cast off such water, or that it collected it, or suffered it to be collected, into an artificial channel, whence it fell or flowed or was discharged onto the premises. Mr. Goodenough, a leading witness for the plaintiffs, after describing the stuff in the water, says that it was "of all kinds and nature that you would find in the streets"; and again, "The effect on the windows from what blows and comes off the bridge is, when it rains heavily, simply sheets of water, containing all kinds of matter from the drive path. * * * My principal objection is this water which will blow there when the wind is in the right direction." I cannot find that the testimony is beyond a showing that surface water flows or falls from the bridge, and is blown by the wind upon these premises. There is no proof even that the flow thereon is direct, as if the premises were directly beneath the edge of the roadway. Nor does it appear but that the same quantity of surface water would exist if this highway were built on the surface of the earth. In Lynch v. The Mayor, 76 N. Y. 60, 63, 32 Am. Rep. 271, the court say:

"The defendant had at least as much right to fill up and raise this avenue as a private owner of a city lot has to fill up and improve his lot, and there can be no question that such an owner may fill up his lot, and build upon it; and the surface water of adjoining lots may thus be prevented from flowing upon it, or the surface water may be thrown from it upon adjoining lots, and flow upon them in a different way and in larger quantities than before; and yet no liability would arise. If it were otherwise, it would be quite difficult to improve city lots and build up a city. Each owner may improve his lot, and protect it from surface water. He may not collect such water into a channel, and throw it upon his neighbor's lot. But he is not bound, for his neighbor's protection, to collect the surface water which falls upon his lot, and lead it into a sewer. Vanderwiele v. Taylor, 65 N. Y. 341; Gannon v. Hargaden, 10 Allen, 106, 87 Am. Dec. 625."

The doctrine of Lynch's Case, so far as it is applicable to the facts in the case at bar, is approved in Seifert v. City of Brooklyn, 101 N. Y. 136, 142, 4 N. E. 321, 54 Am. Rep. 664. In Carll v. Village of Northport, 11 App. Div. 120, 42 N. Y. Supp. 576, the court said:

"It is not disputed by defendant but that there has been an increased flow of water upon plaintiff's premises by reason of the improvement. But its position is that such increase is slight, that the work was authorized and properly performed, and that in making the improvement it exercised a legal right possessed by it to change the grade of the street, and, as no negligence is alleged in the character of the construction or in the performance of the work, no cause of action is made out. The cases upon this subject are numerous, and the law is well settled. It is the undoubted right of a municipal corporation to grade its streets or change the grade when it deems it necessary so to do, and property owners have no ground of complaint, even though the conse-

quence be that surface water is thrown upon the land, or caused to flow thereon in larger quantity than formerly, or is prevented from flowing therefrom and is collected thereon. But no right exists to collect a material body of water by diverting it from its natural flow, or by other means to gather it together, and when thus collected to conduct it by any artificial channel and discharge it in a body upon private property. We so held and applied the rule in a recent case. McCarthy v. Village of Far Rockaway, 3 App. Div. 381, 38 N. Y. Supp. 989.

The rule is also laid down in Rutherford v. Village of Holley, 105 N. Y. 632, 11 N. E. 818, where the court say:

"It is not improbable that the turnpiking of the street and the construction of the gutters diminish to some extent the waste by soakage and evaporation, and thereby increase somewhat the quantity of water which collects at the sluice, and which is discharged onto the Cary lot, and ultimately on the plaintiff's lot. But it would be quite unreasonable to hold that every change in the natural surface or condition of land made in the improvement of a street or highway, which to any extent increases the flow of surface water on adjacent premises, constitutes an actionable injury. The case of Noonan v. City of Albany, 79 N. Y. 470, 476, 35 Am. Rep. 540, and cases of kindred character, establish no such unreasonable and inconvenient doctrine. But it is said that the water, by the acts of the defendant, is thrown upon the plaintiff's lot in a body, whereas before it was dispersed over the surface, and was absorbed, doing comparatively little injury."

See, too, Shearman and Redfield on Negligence (5th Ed.) § 274, note on page 506, citing Watson v. City of Kingston, 114 N. Y. 88, 21 N. E. 102. See Anchor Brewing Co. v. Dobbs Ferry, 84 Hun, 274, 32 N. Y. Supp. 371, affirmed 156 N. Y. 695, 50 N. E. 1115; Farnham on Water Rights, p. 975.

The Special Term, it is true, finds that the side of the bridge is not "inclosed, guarded, or provided with a gutter to prevent it." But, in the first place, there is no suggestion whatever that any such construction is possible. To the lay mind the problem seems difficult. There is a manifest difference between the construction of a gutter drain or curb in a surface highway and in a highway suspended high in air. For there must be an outlet for the gutter drain or curb. Mr. Martin, the consulting engineer of the bridge, who has been continuously identified with it almost since its inception, and who assisted in making the plans, testified:

"There is a fender along the side of the bridge (that is, three inches above the platform); so that all along there, three inches above the roadway, is an open space. That fender is high. That fender is twelve inches wide and is three inches above the planking of the roadway. The rest is open space, next thing to an impossibility. There is no iron screen there of any kind. The weight of the bridge was kept down by constructing it in that way."

The reduction of the testimony to narrative form renders the meaning of the phrase "next thing to an impossibility" obscure, but I may infer that the engineer states that any further or additional construction at that place was almost impossible or impracticable. Even where the water was diverted from its natural course and thrown upon the plaintiffs' premises without providing any outlet, the court was careful to state that it appeared that a drain could have been built so as to carry off the water (Byrnes v. City of Cohoes, 67 N. Y. 204); and Shearman and Redfield say it is well settled that "where a public work as planned is found to result in di-

rect and physical injury to the property of another, which from its nature is liable to be repeated and continuous, but is remediable by the adoption of prudential measures, the corporation is liable," etc.

But, further, as we have seen, the city is not bound to collect surface water which falls upon a highway and to lead it into a sewer. Lynch v. The Mayor, supra. Again, while the city could not plead the quasi judicial character of the plan and construction of the bridge as to acts within the rule laid down in Seifert's Case or Huffmire's Case, supra, I think that it may do so so far as the question of the disposal of the surface water presented by this record is concerned. Paine v. Village of Delhi, 116 N. Y. 224, 22 N. E. 405, 5 L. R. A. 797, and the distinction drawn in Seifert's Case, supra. See, too, Wilson v. The Mayor, 1 Denio, 595, 43 Am. Dec. 719. I do not overlook the fact that the surface water on this highway may be more exposed to winds than if it existed on a surface street, but that is a matter of degree.

Thus there seems on the record to be a distinction drawn between debris which is swept off the bridge by the defendant and the surface-water "which will blow there when the wind is in the right direction"; a result not shown by the proof as due to any action of the defendant in the administration of the bridge. It may be that there has been an increased flow by reason of the structure, but this alone is not sufficient, as we held in Carll v. Village of Northport, ut supra. There is no proof that the construction of the fabric is such as necessarily to collect the water into an artificial channel, whence it fell or flowed or was discharged onto the premises. The principle of judicial notice is not involved. See Town of North Hempstead v. Gregory, 53 App. Div. 350, 65 N. Y. Supp. 867.

As the present proof is not sufficient to cast liability on the defendant for the surface water, and as the damages are evidently based in part upon the flow or fall of such water, the judgment must be reversed.

Judgment reversed, and new trial granted; costs to abide the final award of costs. All concur.